Salvatore INCORVAIA,
Plaintiff-Appellant,

v.

HELLENIC LINES, LTD., "Grigorios–C–
IV", Defendant-Appellee.

No. 32, Docket 81–7099.

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1981.

Decided Jan. 5, 1982.

Rehearing and Rehearing In Banc
Denied March 11, 1982.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff-appellant.

Robert Alexander Hulten, New York City (Edwin K. Reid, Zock, Petrie, Reid & Cur-

tin, New York City, on the brief), for defendant-appellee.

Before NEWMAN and KEARSE, Circuit Judges, and EGINTON,* District Judge.

NEWMAN, Circuit Judge:

The trilateral relationship among longshoreman, stevedore, and shipowner generates an apparently limitless array of legal issues. In *Valentino v. Rickners Rhederei, G.M.B.H., SS Etha*, 552 F.2d 466 (2d Cir. 1977), a longshoreman's negligence action against a vessel owner, we considered whether the lien of the longshoreman's attorney for his fee has priority over the stevedore's lien for its workmen's compensation payments when the recovery in the negligence action is insufficient to satisfy both liens. Having resolved that issue in favor of the attorney's lien, we now find the same issue recurring with the slight variation that in this case the shipowner provides its own stevedoring services. The District Court for the Eastern District of New York (Edward R. Neaher, Judge) concluded that this variation requires according priority to the compensation lien, 502 F.Supp. 280. We disagree and therefore reverse.

Plaintiff-appellant, a longshoreman, was injured while working aboard a vessel owned by defendant-appellee Hellenic Lines. Since Hellenic Lines provides its own stevedoring services, Hellenic, as stevedore-employer, paid plaintiff $13,554.91 in compensation for his injury. Thereafter, plaintiff sued Hellenic in its capacity as shipowner and recovered a verdict of $17,150, against which Hellenic asserted its compensation lien in the amount of $13,554.91. Plaintiff's attorney, relying on *Valentino*, applied to receive his fee of $7,109.36 as a first charge against the judgment. The District Court gave priority to Hellenic's compensation lien and awarded plaintiff's attorney $3,595.09—the remainder of the judgment after deducting the stevedore's compensation lien. Judge

---

* The Honorable Warren W. Eginton of the United States District Court for the District of Connecticut, sitting by designation.

Neaher pointed out that *Valentino* had based priority of the attorney's lien partially on the common fund doctrine, the equitable principle that one who creates a fund for the benefit of others is entitled to be paid from that fund, *see Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). That principle, Judge Neaher concluded, is inapplicable to this case, where the shipowner and the stevedore are the same entity, because the attorney's efforts will never create any benefit for the stevedore: whatever dollars it recoups for its compensation lien are being paid by it as defendant in the negligence action.

Judge Neaher also pointed out that prior to the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* (1976), the longshoreman's negligence suit usually conferred no benefit on the stevedore, but instead exposed it to substantial third-party liability in an indemnity action brought by the vessel owner. *See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The existence of the *Ryan* indemnity action created a conflict of interest between longshoreman and stevedore that led some courts to rule that the stevedore's compensation lien was to be satisfied in full before the lien of the longshoreman's attorney. *Spano v. N.V. Stoomvaart Maatschappij "Nederland,"* 340 F.Supp. 1194 (S.D.N.Y. 1971); *Russo v. Flota Mercante Grancolombiana*, 303 F.Supp. 1404 (S.D.N.Y.1969). In *Valentino* we concluded that abolition of the *Ryan* indemnity action required disapproval of *Spano* and *Russo*. 552 F.2d at 470. In this case, however, Judge Neaher thought that the identity between the vessel owner and the stevedore created a conflict of interest between longshoreman and stevedore similar to the situation that existed prior to the 1972 Amendments and similarly called for priority for the compensation lien.

We agree with the District Court that the common fund rationale provides no support for priority of the attorney's lien when the shipowner and the stevedore are the same entity. However, in light of the Supreme Court's opinion in *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), we conclude that priority for the attorney's lien, in both the *Valentino* situation and the case before us, is supported directly by the statutory scheme of the LHWCA and its legislative history.

Unlike the issue we face here concerning the priority of the compensation lien, the issue before the Supreme Court in *Bloomer* was the amount of the lien. Specifically, the issue was whether, in the typical three-party situation, the amount of the compensation lien should be reduced by a proportionate share of the longshoreman's legal fee and expenses. In *Bloomer*, both the stevedore and the longshoreman agreed that expenses, including legal fees, were first charges against the negligence recovery, 445 U.S. at 76 n.2, 100 S.Ct. at 927 n.2. The longshoreman's claim was that his net recovery (negligence judgment less attorney's fees and expenses) should be increased by a proportionate share of the attorney's fee and expenses, with the increase supplied by a corresponding decrease in the compensation lien.[1] Though the issue before us differs from the issue in *Bloomer*, we think the Supreme Court's approach to the problem, and particularly its analysis of the legislative history of the LHWCA, leads to a conclusion that the compensation lien applies only to the longshoreman's net proceeds from the negligence suit, after deduction of litigation expenses and a reasonable attorney's fee.

First, the Court pointed out that the purpose of the judicially recognized subrogation claim of the stevedore to recoup its compensation payment from the longshoreman's negligence judgment was to prevent double recovery by the longshoreman. *Id.*

1. The proportionate share reduction, as claimed by the longshoreman, was calculated by reducing the amount of the compensation lien by the ratio that the attorney's fee and expenses bore to the total negligence judgment.

at 79, 100 S.Ct. at 929. That purpose would be partially undermined if the longshoreman could increase his net recovery by receiving from the stevedore a proportionate share of the legal fee and expenses incurred in the negligence suit. The longshoreman's net recovery, the Court concluded, must remain fully available to the stevedore's compensation lien, without diminution of that lien, but this reasoning recognizes that the compensation lien operates only upon the longshoreman's net recovery.

Second, the Court observed that Congress, in amending the LHWCA in 1959 to eliminate all aspects of the longshoreman's election between compensation and negligence remedies, understood that the compensation lien operated only upon the longshoreman's net recovery in the negligence action. "[A]n employer must be reimbursed for any compensation paid to the employee out of the *net* proceeds of the recovery." S.Rep.No. 428, 86th Cong., 1st Sess. 2 (1959) (emphasis added), *reprinted in* [1959] U.S. Code Cong. & Ad.News 2134, 2135; *see* 445 U.S. at 81, 100 S.Ct. at 929.[2] Moreover, as the Court pointed out, the House version of the 1959 amendment explicitly provided that the stevedore's lien on recovery from a third person came "after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery," H.R.Rep.No. 229, 86th Cong., 1st Sess. 6 (1959) (italics omitted);

**2.** The Court also noted that "Congress did not intend to alter the rule allowing the stevedore to recover the full amount of its lien from the longshoreman's third-party recovery." 445 U.S. at 80–81, 100 S.Ct. at 929. Since the very next sentence in the opinion quotes from the Senate Report's reference to an employer's reimbursement from "net" proceeds of the recovery it seems evident that recovering the "full amount" of the compensation lien means use of the net proceeds, when they are sufficient, to pay the compensation lien in full, undiminished by the pro rata portion of the attorney's fee that Bloomer sought for himself.

**3.** *Fontana* concerned only the issue, ultimately resolved in *Bloomer*, whether the compensation lien should be reduced by a pro rata share of the attorney's fee; it accepted the priority of the attorney's fee as a first charge upon the negligence award. *See Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026, 1034 n.13 (5th

the House passed this version, 105 Cong. Rec. 5561–62 (1959), but accepted the Senate version, 105 Cong.Rec. 15343 (1959), apparently satisfied that this version adequately continued existing judicial practice, 445 U.S. at 81–82 n.6, 100 S.Ct. at 929–30 n.6. That practice included recognition of the fact that "[t]he expense of securing the recovery is, as in equity it should be, a first charge against the fund itself." *Fontana v. Pennsylvania R.R.*, 106 F.Supp. 461, 464 (S.D.N.Y.1952) (Weinfeld, J.), *aff'd sub nom. Fontana v. Grace Line, Inc.*, 205 F.2d 151 (2d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).[3]

With the stevedore's compensation lien thus understood to reach only the longshoreman's net recovery in the negligence action, we see no reason to enlarge its scope to reach the gross amount of the recovery simply because in this case the shipowner is also the stevedore. The Supreme Court has recognized that Congress, in authorizing the longshoreman's negligence action, intended "that all longshoremen are to be treated the same whether their employer is an independent stevedore or a shipowner stevedore and that all stevedores are to be treated the same whether they are independent or an arm of the shipowner itself." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266, 99 S.Ct. 2753, 2759, 61 L.Ed.2d 521 (1979). In *Valentino* we pointed out

Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). Subsequent cases relied on *Fontana* not only to disallow pro rata decrease of the compensation lien when the negligence award was large enough to cover both the attorney's fee and the compensation lien, *Davis v. United States Lines Co.*, 253 F.2d 262 (3d Cir. 1958); *In re Sheffield Tankers Corp.*, 222 F.Supp. 441 (N.D.Cal.1963); *Oleszczuk v. Calmar S.S. Corp.*, 163 F.Supp. 370 (D.Md.1958), but also to give priority to the compensation lien when the negligence award was too small to cover both the lien and the attorney's fee. *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 350–51 (5th Cir. 1966) (noting stevedore's employment of its own attorneys to protect its lien), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967); *Spano v. N.V. Stoomvaart Maatschappij "Nederland," supra; Russo v. Flota Mercante Grancolombiana, supra.*

that permitting the compensation lien to come ahead of the attorney's lien would deter counsel from pressing longshoremen's claims on a contingent fee basis except "where a recovery substantially in excess of the amount of the stevedore's lien is a virtual certainty." 552 F.2d at 469. We were unwilling to accept such deterrence in *Valentino,* and that concern remains just as valid when the shipowner and the stevedore are the same entity.

Since we view the compensation lien as reaching only the net proceeds from the negligence suit, we do not find decisive, as did many of the pre-1972 cases, whether the longshoreman's attorney has created a fund for the benefit of the stevedore or whether a conflict of interest between longshoreman and stevedore precludes the "common fund" approach. If we were to pursue that inquiry, we would agree with Judge Neaher that Hellenic's decision to perform its own stevedoring services creates a conflict of interest similar to what existed before the *Ryan* indemnity action was abolished. However, the situation is not identical and does not require revival of the approach to attorney's fees taken in *Spano* and *Russo.* When the indemnity action existed, the stevedore had to pay not only compensation but also its own attorney's fee in defending against the shipowner's suit. That legal fee had been explicitly relied upon as one reason for giving the compensation lien priority over the attorney's fee of the longshoreman. *Riddick v. Rederi A/B Fredrika,* 271 F.Supp. 360, 360–61 (E.D.Va.1967). However, Hellenic incurs only the legal fee to defend itself as vessel owner in the negligence action; it incurs no extra fee to defend a *Ryan* indemnity suit. Moreover, when the shipowner acts as its own stevedore, it may elect not to self-insure, in which event the compensation carrier, which has its own subrogation right, 33 U.S.C. § 933(h) (1976), is not adverse to the

longshoreman and stands to benefit from the net negligence recovery. Now that *Valentino* has limited the compensation lien to the longshoreman's net recovery since the 1972 Amendments (whether or not it was so limited before, *see Strachan Shipping Co. v. Melvin,* 327 F.2d 83 (5th Cir. 1964)), we think that, in keeping with *Edmonds,* the scope of the lien should not be varied by the happenstance of whether the stevedore and the vessel owner are the same, or whether the combined entity has a separate compensation carrier, or other factors irrelevant to the incentive of the longshoreman's attorney to bring the negligence action authorized by the Act. There are enough litigable issues in this area without opening up a new inquiry in each case as to whether the *Valentino* rule should be altered.[4]

Though Hellenic, as stevedore, views itself, like *Ryan* indemnitors, as being asked to pay the longshoreman's attorney for the privilege of being sued, it is more realistic to view Hellenic, as shipowner, to be paying the attorney because it was negligent toward his client. Moreover, the duty of care owed the longshoreman is unaffected by the fact that Hellenic as shipowner elected to be its own stevedore. The mechanisms for securing compensation for breach of that duty should also be unaffected by Hellenic's preference not to contract for stevedoring services. Those mechanisms include a compensation lien limited to the net proceeds of the longshoreman's negligence recovery, after deduction of a reasonable attorney's fee and expenses.

The judgment is reversed and remanded for entry of a judgment consistent with this opinion.

KEARSE, Circuit Judge (concurring):

While I believe the granting of priority to the attorney's lien produces an inequitable

---

4. Of course, the reasonableness of the attorney's fee may be challenged, lest it encroach unduly on the net proceeds subject to the compensation lien. The fee of approximately one-third of a modest verdict has not been challenged as unreasonable in this case. By contrast, the examples offered by Judge Brown to

illustrate undesirable consequences of the Fifth Circuit's pre-1972 decision to limit the compensation lien to the net recovery are premised on a 40% attorney's fee applied to substantial recoveries. *Strachan Shipping Co. v. Melvin, supra,* 327 F.2d at 89 n.9, 90 n.11, 93 n.20 (Brown, J., dissenting.)

result when the shipowner is its own stevedore and the suit yields less than the amount the defendant has already paid the longshoreman as compensation plus the fees of the attorney to bring suit, I concur in the judgment on the basis of the legislative history of the 1959 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, Pub.L.No. 86–171, 73 Stat. 391 (amending 33 U.S.C. § 933), discussed in the majority opinion, *ante*, which suggests that Congress intended the attorney's lien to have priority.