**Angelo DEL RE, Plaintiff-Appellee,**

v.

**PRUDENTIAL LINES, INC.,
Defendant-Appellant.**

**No. 400, Docket 81–7591.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1981.

Decided Jan. 21, 1982.

William Sonenshine, New York City (Bernard Klieger, Klieger & Hartman, New York City, of counsel), for defendant-appellant.

Martin Lassoff, New York City (Howard Fishkin, Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellee.

Walker & Corsa, New York City (Joseph T. Stearns, Sandra R. M. Gluck, New York City, of counsel), for amicus curiae Central Gulf Steamship Corp., Bay Tankers, Inc., Seatrain Lines Inc., Moore-McCormack Lines, Inc. and Apex Marine Corp.

Before LUMBARD, MANSFIELD and NEWMAN, Circuit Judges.

MANSFIELD, Circuit Judge:

This is another in a series of cases[1] in which we have been required to interpret the statutory scheme Congress established to compensate longshoremen and certain other maritime workers for work-related injuries. Section 33(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(b) (the "Act"), provides that "all right" that a longshoreman

---

1. See *Rodriguez v. Compass Shipping Co. Ltd.,* 617 F.2d 955 (2d Cir. 1980), *aff'd,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981); *Verderame v. Torm Lines,* 670 F.2d 5 at 7 (2d Cir. 1982).

has to sue a negligent third party (usually a shipowner) for personal injury damages is automatically assigned to his employer unless the longshoreman commences an action against the third party within six months after he accepts compensation under an award in a compensation order of the Benefits Review Board.[2]

Prudential Lines, Inc. ("Prudential"), a shipowner, appeals from an order of the Southern District of New York, Leonard B. Sand, *Judge*, denying its motion to dismiss an action for damages for personal injuries by Angelo Del Re, a longshoreman, against it on the ground that the action is barred by § 33(b)'s six-month time bar. The district court certified for appeal pursuant to 28 U.S.C. § 1292(b) the question of whether under Rule 17(a), F.R.Civ.P., an employer may prevent dismissal under § 33(b) by "ratifying" the employee's commencement of an action in his own name and on his own behalf after the statutory period limiting his right to sue has passed. Because Rule 17(a) in no way permits the circumvention of what we believe to be § 33(b)'s absolute bar to suits by a longshoreman more than six months after he receives an award in a compensation order, we reverse.

Del Re was injured on March 7, 1975, while working for Northeast Stevedores, Inc. on a ship owned by Prudential. As a result of this accident Del Re was unable to work for 29 weeks and suffered permanent injury to his right arm and both of his legs. Northeast's insurance carrier, The State Insurance Fund, paid Del Re interim compensation during the period he was unable to work. On February 25, 1977, the Deputy Commissioner, Second Compensation District, of the U.S. Department of Labor approved an award of $13,935.58 and filed an award in a compensation order.

On October 17, 1977, Del Re commenced a personal injury negligence action against Prudential in the Supreme Court of New York. Prudential did not respond in any way to the suit, but Del Re did not seek a default judgment. On April 28, 1980, he commenced the instant federal action in the Southern District of New York. His action was brought in his own name, seeking damages on his own behalf for injuries in the course of his employment as a longshoreman on March 7, 1975, aboard Prudential's ship S.S. Santa Barbara.

Prudential immediately moved to dismiss the action on grounds of laches and failure to bring the suit within six months after Del Re's receipt of the award under the Department of Labor compensation order, as required by § 33(b). Since Prudential was unable at that time to show when the award in the compensation order was filed or when the settlement was agreed to by the parties, Judge Sand on January 30, 1981, denied the motion without prejudice to renewal. He further decided that the laches issue could best be decided after a trial. After the judge indicated that Del Re should elect within 15 days whether he wished to seek a default judgment in the state court proceeding or to litigate in federal court, the parties filed a stipulation discontinuing the state court action.

After obtaining a copy of the compensation order, which was dated February 25, 1977, Prudential renewed its motion to dismiss, relying on the facts that the state court action was commenced on October 17, 1977, and the federal court action was commenced on April 28, 1980, both more than six months after the compensation award was filed. Del Re responded to the motion by obtaining a letter from Northeast's insurance carrier, The State Insurance Fund (which as subrogee of Northeast pursuant to 33 U.S.C. § 933(h) was the sole possessor of the right to sue Prudential for Del Re's injuries) purporting to "ratify" the commencement of "his" action in his own behalf. Del Re argued that under Rule 17(a), F.R.Civ.P., The State Insurance Fund, the

---

**2.** Section 33(b) provides:

"Acceptance of such compensation under an award in a compensation order filed by the *deputy commissioner or Board shall operate* as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award."

real party in interest, cured the admitted defect in the suit by ratifying his commencement of it, even though it was commenced on his own behalf. In an opinion dated June 18, 1981, Judge Sand agreed, denying Prudential's motion to dismiss but stating:

> "We are by no means unmindful of the paradox which results: the insurer cannot institute an action in its own name because the statute of limitations bars such a proceeding; the longshoreman cannot maintain an action in his own name because more than six months have elapsed since receipt of the compensation award; although neither the insurer nor the longshoreman, proceeding alone, can maintain the action, the consequence of the longshoreman having brought an action within the period of the statute of limitations in conjunction with the ratification by the insurer, permits the action to be resuscitated under F.R.Civ.P. 17(a)." [3]

Prudential then applied to have the question certified to this court pursuant to 28 U.S.C. § 1292(b), which Judge Sand granted on July 7, 1981. We granted leave to appeal on August 11, 1981.

### DISCUSSION

Section 33(b) of the Act states in no uncertain terms that, unless an injured longshoreman brings suit against a third party within six months after receiving an award in a compensation order, all his rights against the third party are automatically assigned to his employer;[4] a longshoreman has no right thereafter to sue the third party. As the Supreme Court noted in *Rodriguez v. Compass Shipping Co. Ltd.*, 451 U.S. 596, 617–18, 101 S.Ct. 1945, 1957–58, 68 L.Ed.2d 472, 487–88 (1981), the Longshoremen's and Harbor Workers' Compensation Act reflects a balancing of the conflicting interests of longshoremen, stevedore-employers, and shipowners. Congress' enact-ment in 1959 of the six-month rule benefited the injured longshoreman by allowing him time, after learning how much compensation he would receive from his employer, to decide whether to bring suit against the shipowner. Prior thereto the longshoreman's right to sue was terminated immediately upon receipt of the award. *Rodriguez v. Compass Shipping Co. Ltd., supra,* 451 U.S. at 602, 101 S.Ct. at 1950, 68 L.Ed.2d at 480; *Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). But the six-month provision, while according the longshoreman a fixed period of time within which to make up his mind on whether to sue, also forces him to make his decision with reasonable promptness, thereby benefiting the shipowner, who desires a prompt resolution of all claims, and the stevedore-employer, who does not want to be delayed unduly in deciding whether himself to sue the shipowner for damages. Under the Act a successful recovery by the stevedore-employer would be applied toward reimbursement of any compensation payments made by it or its subrogated insurance carrier to the longshoreman and toward a reasonable attorney's fee, with 20% of any remaining balance being retained by the stevedore-employer and 80% paid to the longshoreman, 33 U.S.C. § 33(e).

Thus § 33(b)'s six-month rule represents a balancing of interests. Various provisions of the Act, while apparently unrelated, represent legislative trade-offs between the interests of these three concerned parties. Accordingly, we must tread warily when interpreting the Act and "adhere closely to what Congress has written." *Rodriguez v. Compass Shipping Co. Ltd., supra,* 451 U.S. at 617, 101 S.Ct. at 1957, 68 L.Ed.2d at 488.

In *Rodriguez v. Compass Shipping Co. Ltd.,* 617 F.2d 955 (2d Cir. 1980), *aff'd,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), we considered whether, in spite of

---

**3.** The district court's statement that an action by the employer would be barred by a state statute of limitations is incorrect. Such an action would be in admiralty and governed by the doctrine of laches. See *Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956); *Hill v. W. Bruns & Co.,* 498 F.2d 565, 568 (2d Cir. 1974).

**4.** See note 2 *supra.*

the clear language of § 33(b), a longshoreman might be able to bring suit after the six-month period had passed. Rodriguez argued that his employer's failure to sue indicated a conflict of interest between him and it and that as a matter of public policy the right to sue, when the stevedore-employer refuses to pursue it, should be reassigned as a matter of law to the longshoreman, relying upon *Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). We rejected that argument, noting that *Czaplicki* involved a real conflict of interest: the employer's insurer, which by subrogation had acquired the employer's exclusive right to sue, was also the insurer of the shipowner's contractor, who faced liability as a defendant and as an indemnitor of the shipowner. Thus in *Czaplicki* the party holding the right to sue would have been suing itself if it had exercised that right. Moreover, at the time *Czaplicki* was decided, a shipowner could seek indemnity from an employer-stevedore for any damages it was required to pay to the employee, with the result that the employer might ultimately have to pay any damages that might be awarded. Thus, even without the "same insurer" conflict of interest, a stevedore-employer would have been unlikely to bring suit when *Czaplicki* was decided. These factors were no longer present when we decided *Rodriguez.* We therefore adhered to the statutory framework and held that at the expiration of the six-month period a longshoreman is completely divested of any rights he once had to bring suit against a shipowner.

On appeal the Supreme Court affirmed our decision and rejected the Fourth Circuit's attempt to fashion a longshoreman's right to demand reassignment when his stevedore-employer refuses to sue the shipowner. *Rodriguez, supra,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472. The Court noted the delicate balancing of interests by Congress in § 33(b). While holding out the possibility that *Czaplicki* might still be good law when an actual conflict of interest existed, it rejected "the fashioning of an entirely new set of remedies to deal with an aspect of a problem that Congress expressly addressed." *Id.* at 486, 101 S.Ct. at 1956. It interpreted § 33(b) as "an unequivocal statutory bar" to longshoreman suits against third parties after the passage of the six-month period. *Id.*

Against this background we are faced with Del Re's claim that § 33(b) may be circumvented by a "ratification" of his action by the stevedore-employer, as the "real party in interest," pursuant to Rule 17(a), F.R.Civ.P. It was on this theory that the district court based its decision to deny Prudential's motion to dismiss, relying heavily on *Motta v. Resource Shipping & Enterprises Co.,* 499 F.Supp. 1365 (S.D.N.Y.1980). Rule 17(a) provides in pertinent part that:

"Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

The Advisory Committee made clear in its accompanying Note that the provision allowing ratification, joinder, and substitution "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." The purpose of this "exception" to the requirement that all actions be prosecuted in the name of the real party in interest is therefore not to create new substantive rights, but to avoid forfeiture in situations in which it is unclear at the time the action is filed who had the right to sue and it is subsequently determined that the right belonged to a party other than the party that instituted the action. See *Hobbs v. Police Jury,* 49 F.R.D. 176, 180 (W.D.La.1970) (3-judge court); C. Wright & A. Miller, *Federal Practice and Procedure* § 1555, at 707–08.

No difficulty, confusion or mistake ever existed in the present case regarding the

identity of the party in whose name the suit must be brought. Section 33(b) was at all relevant times explicit and unequivocal in providing that only the employer-stevedore or its insurer may bring this action after the six-month period has passed, and we had so held in *Rodriguez, supra.*[5] Del Re and his employer are not merely different parties with the same claim. They are different parties with different claims. Moreover, allowing ratification under Rule 17 would violate 28 U.S.C. § 2072 which provides that federal rules of court "shall not ... enlarge ... any substantive right."

The term "ratification" implies that the stevedore-employer is the party in interest for whom the present action was commenced, whereas in fact Del Re brought suit in his own name to benefit himself, not his employer or its subrogated insurer. If the suit had proceeded in his own name as the real party in interest (as he and his counsel originally intended), he would have claimed 100% of any recovery, subject to the insurer's lien for compensation paid him. A suit by the employer under the Act, on the other hand, would be of different dimensions, since 20% of any recovery over and above compensation recouped and an attorney's fee would be retained by the employer. Moreover, the fee payable to the attorney in a suit by the employer would be lower than that payable by Del Re in a suit brought in his own behalf.

To give effect to such a "ratification" would defeat the purposes of the Act as amended in 1959 and in 1972. One of these was to reduce the flood of longshoremen's litigation that had "congested courts," in which "the primary beneficiaries had been lawyers, not injured longshoremen," *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 83–86, 100 S.Ct. 925, 926, 63 L.Ed.2d 215 (1980); Hearings, Select Subcommittee on Labor of the House Committee on Educa-

tion and Labor, 92nd Cong., 2d Sess., 106 (1972). A second was to reduce the heavy expenses formerly incurred in defending these suits and thus increase the level of compensation benefits to longshoremen. The district court erroneously assumed, relying on the reasoning of *Motta*, with which we disagree, that the Act was amended solely for the protection and benefit of the longshoreman and his employer and not for that of the third-party shipowner. Congress devised a statutory scheme intended to balance the interests of all three. *Rodriguez v. Compass Shipping Co. Ltd., supra,* 451 U.S. at 596, 617–18, 101 S.Ct. at 1945, 1957–58, 68 L.Ed.2d at 487–88. "One of the consequences of such an assignment [from the longshoreman to the stevedore-employer under § 33(b)] is the risk that the employer will choose not to sue." *Id.*, 451 U.S. 614, 101 S.Ct. at 1955–56, 68 L.Ed.2d at 485–86. The shipowner was to be benefited by the six months statutory bar in § 33(b) to the extent that, once the longshoreman's right was irrevocably assigned by the statute to his stevedore-employer, not only did the stevedore's right thereafter differ in character from that of the longshoreman but the likelihood of a suit thereafter by the stevedore-employer would be greatly reduced.

Only when there is a likelihood of a recovery large enough to cover legal fees and the compensation paid would the stevedore have an incentive to sue the shipowner. Moreover, stevedores, who are hired by shipowners, are usually reluctant to jeopardize their business relations with shipowners by instituting suits on their own behalf against them. Attorneys are less willing to represent stevedore-employers in such suits, since their lawyers are limited by the statute to recovery of a "reasonable ... fee as determined by the deputy commissioner or Board," § 33(e)(1)(A), 33 U.S.C.

---

**5.** In addition to the district court's decision in *Rodriguez*, 456 F.Supp. 1014 (S.D.N.Y.1978), the following other cases, in which Zimmerman and Zimmerman were counsel for the plaintiffs, had held that a longshoreman, by failing to bring suit within six months after an award, had lost his right to sue: *Panzella v. Skou*, 471

F.Supp. 303 (S.D.N.Y.1979) (Werker, J.); *Francavilla v. Bank Line, Ltd.*, 470 F.Supp. 94 (S.D.N.Y.1979) (Duffy, J.); *Perez v. Arya National Shipping Lines, Inc.*, 468 F.Supp. 799 (S.D.N.Y.1979) (Lasker, J.); *Perez v. Costa Armatori, S.P.A.*, 465 F.Supp. 1211 (S.D.N.Y.1979) (Knapp, J.).

§ 933(e)(1)(A), than to bring suits on behalf of longshoremen, in which the usual arrangement is a third-contingent fee. The stevedore-employer, moreover, may be unwilling (or less willing than the longshoreman) to incur costs and other expenses when the ultimate benefit to it, even if it is successful, is so limited.

Under the "ratification" theory this would be changed. Since the action is brought by the longshoreman rather than by his stevedore-employer, the latter assumes no risk at all by "ratifying" it. If the suit is unsuccessful, the longshoreman-employee, as Del Re concedes, assumes the full burden of paying the costs and expenses of the action; if, on the other hand, the suit is successful, his attorney would claim not to be bound by § 33(e)'s limitation on his fee. The effect would be to reintroduce the flood of longshoremen's suits which Congress sought to reduce by its amendment of the Act. In addition to reopening the floodgates of wasteful litigation which Congress sought to eliminate, the ratification theory would raise new procedural issues, such as whether the Act's requirement that the attorney's fee incurred by a stevedore be approved by the deputy commissioner or board, § 33(e)(1)(A), 33 U.S.C. § 933(e)(1)(A), and its provision for 80%–20% division of any balance over compensation paid, § 33(e), 33 U.S.C. § 933(e), apply to a "ratified" suit prosecuted by a longshoreman, and whether the longshoreman or the stevedore is responsible for the fee of the attorney prosecuting the claim.

For these reasons the purported "ratification" under Rule 17(a) must be rejected. We adhere to the principle of *Rodriguez*, that if a longshoreman fails to bring suit within six months after receiving a compensation award he loses completely his right to sue the shipowner. Thereafter only the employer-stevedore or its subrogated insurer may institute such an action.

The certified question is answered in the negative. The order of the district court is reversed and the case is remanded with directions to dismiss the complaint.