William KIRSCH

v.

**BANGLADESH SHIPPING CORP.**

Civ. A. No. 82–1282.

United States District Court,
E. D. Pennsylvania.

July 26, 1982.

Charles Sovel, Freedman & Lorry, Philadelphia, Pa., for plaintiff.

Carl D. Buchholz, III, Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action, I am presented with a recurring question arising under section

33(b) of the Longshoremen's and Harbor Workers' Compensation Act [1]—whether a longshoreman's right to commence a third-party negligence action may be statutorily assigned to his employer without "an award in a compensation order filed by the deputy commissioner or [the Benefits Review Board]." Because the express terms of section 33(b) foreclose such a construction, I hold that the mere receipt of compensation payments by a longshoreman does not trigger a statutory assignment of his right of action against the shipowner and therefore deny defendant's motion for summary judgment which asserts a contrary position.

The plaintiff, a longshoreman, was injured on November 17, 1980, while working aboard the M. V. BANGLAR KAKOLI, a vessel owned and operated by the defendant. On November 19, 1980, plaintiff's employer filed an "Employer's First Report of Accident and Occupational Illness" with the Department of Labor.[2] One week later, the employer commenced payment of compensation benefits to plaintiff, retroactive to November 18, 1980, and filed with the Department of Labor a "Payment of Compensation Without Award" form which verified the uncontested payment of benefits. Plaintiff has continued to receive compensation payments to date. Beyond receiving the two forms described above, the Department of Labor's Office of Worker's Compensation Programs, which administers LHWCA claims, has taken no formal action in this matter.

On March 22, 1982, a full 16 months after his initial receipt of compensation payments, plaintiff commenced this action contending that his injuries were caused by defendant's negligence. Such a third-party negligence action is expressly authorized by

33 U.S.C. § 933(a) and (b) which provide as follows:

(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

(b) Acceptance of such compensation *under an award in a compensation order* filed by the deputy commissioner or [the Benefits Review Board] shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award. (emphasis added).

The gist of defendant's motion for summary judgment is that plaintiff's acceptance of compensation payments in combination with the receipt by the Department of Labor of the required verification forms, constitutes an "award in a compensation order" within the meaning of section 33(b). Because more than six months have elapsed since the initial payment was made, defendant contends that plaintiff's right to bring a third-party negligence action has been statutorily assigned to his employer and he is therefore irrevocably barred from maintaining this suit under the rule of *Rodriguez v. Compass Shipping Co., Ltd.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981).[3] Plaintiff, by contrast, argues that an employer's voluntary payment of compensation without a formal award cannot trigger a statutory assignment because section

---

1. 33 U.S.C. § 933(b) (hereinafter referred to as LHWCA or "the act").

2. The form was submitted pursuant to 20 C.F.R. § 702.201 which provides in relevant part:
   Within 10 days of the date of an employee's injury or death, or 10 days from the date an employer has knowledge of an employee's injury or death .. the employer shall furnish a report thereof to the deputy commis-

sioner for the compensation district in which the injury or death occurred . . . .

3. In *Rodriguez*, the Supreme Court held that the passage of the six-month period, and consequent assignment of the longshoreman's cause of action to his employer, serves as a complete bar to the longshoreman's right to maintain an independent third-party action regardless of whether the employer, as assignee, pursues the claim.

33(b) expressly makes such an assignment contingent upon the entry of a formal award either by a deputy commissioner or by the Benefits Review Board. Because no award was made in this case, plaintiff asserts that the assignment contemplated in section 33(b) could not occur.

In ascertaining which of these positions most accurately reflects the mandate of the LHWCA, my inquiry "must begin with the language of the statute itself" *Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176, 187, 100 S.Ct. 2601, 2608, 65 L.Ed.2d 696 (1980), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive" *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Applying this standard to the issue presented here virtually forecloses any further debate as to its resolution. Section 33(b) explicitly provides that a statutory assignment does not occur until six months after "acceptance of . . . compensation under an award in a compensation order filed by the deputy commissioner or [the Benefits Review Board]." Examining this language in the context of the act's total compensation scheme shows conclusively that section 33(b)'s assignment provision is not activated merely by the receipt of compensation payments. Under 33 U.S.C. § 914(a), an employer is required to pay compensation "periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer." An employer who controverts an employee's claim must file a notice with the deputy commissioner within 14 days of learning of the injury. 33 U.S.C. § 914(d). The deputy commissioner may then investigate the claim and enter an order either rejecting it or making an award. *See* 33 U.S.C. § 919. Thus, the act clearly draws a distinction between an employer's voluntary payment of compensation benefits, which is made without any affirmative action by the deputy commissioner, and payments on a

claim which are made pursuant to an award in a compensation order entered by the deputy commissioner. Section 33(b), by its express terms, applies only to the latter situation. Numerous cases have so held. *See Rother v. Interstate and Ocean Transport Co.*, 540 F.Supp. 477 at 484–485 (E.D. Pa.1982); *Klitznsky v. Pakistan Shipping Corp.*, 530 F.Supp. 326 (E.D.Pa.1981); *Collier v. John Mendis, Inc.*, 526 F.Supp. 459 (D.D.C.1981); *Fearson v. Johns-Manville Sales Corp.*, 525 F.Supp. 671, 674–75 (D.D.C. 1981); *Dunbar v. Retla Steamship Co.*, 484 F.Supp. 1308 (E.D.Pa.1980).

Defendant, however, points to a line of authority in the Fourth Circuit that acceptance of compensation payments without a formal award may result in a statutory assignment of the longshoreman's right to maintain a third-party negligence action. In *Simmons v. Sea-Land Services, Inc.*, 676 F.2d 106 (4th Cir. 1982), the court held that "an award in a compensation order" is created upon the completion of three events:

(1) the employer, having not contravened its liability, initiates compensation payments to the longshoreman; (2) the deputy commissioner files the employer's notice that compensation payments have been initiated; and (3) the longshoreman accepts any of the payments.

*Id.* at 109 (footnote omitted). The court's holding was based upon two earlier Fourth Circuit decisions, *Liberty Mutual Insurance Co. v. Ameta & Co.*, 564 F.2d 1097 (4th Cir. 1977), and *Caldwell v. Ogden Sea Transport, Inc.*, 618 F.2d 1037 (4th Cir. 1980). In *Ameta*, the longshoreman accepted compensation payments without a formal award and the deputy commissioner received a number of documents pertaining to the payments including a "Payment of Compensation Without Award" form similar to the one filed in this case. More than six months after the longshoreman's receipt of these payments, his employer's compensation carrier [4] commenced a third-party action against the shipowner to recover the

---

4. Under 33 U.S.C. § 933(h), when an insurance carrier has made compensation payments, it is subrogated to all of the insured employer's rights under 33 U.S.C. § 933.

benefits paid to the longshoreman. The shipowner moved for summary judgment contending that there had been no formal "award" in a compensation order and therefore no statutory assignment to the carrier of the longshoreman's right of action under section 33(b). In affirming the trial court's denial of the shipowner's motion, the court of appeals held that "an award under a compensation order does not require formal entry of an award *per se.* Rather, the focus should properly be upon some act of ratification of compensation, whether formal or informal, and the subsequent acceptance of compensation by the claimant." 564 F.2d at 1102. Although it did not delineate the general standards which trigger a statutory assignment, the court did determine that the longshoreman's acceptance of payments when combined with the filing of certain documents by the deputy commissioner resulted in the assignment of the longshoreman's right to maintain a third-party action. In *Caldwell*, the court extended this holding to a longshoreman's action commenced more than six months after termination of compensation payments being paid without a formal award.[5]

Were I to apply the *Simmons* standards to this case, the defendant unquestionably would be entitled to summary judgment. However, I am unable to accept the reasoning of *Simmons* and its predecessors. First, and most significantly, they are in conflict with the language of section 33(b). Under 33 U.S.C. § 919(c), when a claim for compensation is filed with the deputy commissioner he may investigate it and, with or without a hearing, enter an order which either rejects the claim or awards benefits. The act explicitly provides that such an order is "referred to in this chapter as a compensation order." 33 U.S.C. § 919(e). Thus, the term "an award in a compensation order" as used in 33 U.S.C. § 933(b), has a narrow, specifically defined meaning, *i.e.*, an order awarding benefits filed by the deputy commissioner or the Benefits Review Board in response to a compensation claim. The Fourth Circuit's expansion of this term to encompass virtually any compensation payment made by an employer, stretches the meaning of section 33(b) well beyond the bounds of any construction supported by its language.[6]

Moreover, the Fourth Circuit's policy justification for its interpretation, although real, is not compelling. In *Ameta*, the court reasoned:

> We believe this result is a logical one. A stevedore-employer should not be required to controvert every claim for compensation under the Act simply to ensure the entry of a formal award in order to preserve the statutory assignment and subrogation rights of the stevedore-employer and insurance carrier under 33 U.S.C. §§ 933(b) and (h). Such a requirement would frustrate the Act's time-honored purpose which was to eliminate the delay and expense incident to litigation. *Wheeling Corrugating Co. v. McManigal,* 41 F.2d 593, 595 (4th Cir. 1930), and cripple the congressionally explicit goal of prompt payment of claims that need not be controverted by employers.

564 F.2d at 1103. *See also Simmons, supra,* 676 F.2d at 109 ("We believe that this rule will foster the prompt payment of benefits by eliminating the need for perfunctory contravention by the employer, and will provide the employer with access to its remedies within a reasonable time"). While

---

5. However, the Court did not bar the longshoreman's action. It determined that the employer's failure to pursue the assigned claim resulted in its reassignment to the longshoreman. This aspect of the holding was subsequently rejected by the Supreme Court in *Rodriguez, supra.*

6. In *Verderame v. Torm Lines,* 670 F.2d 5 (2d Cir. 1982), the Second Circuit took a somewhat stricter view of what constitutes an award on a compensation order. Under its formulation, an award is not deemed made until the amount due the longshoreman is fixed by order, stipulation, or informal order. Because the payments made to plaintiff in this case fall far short of this threshold, I am not called upon to decide whether a payment which falls within the *Verderame* standard, but is nonetheless not technically an award in a compensation order as defined in the act, is sufficient to cause a statutory assignment after the passage of the requisite six months.

there is some merit to this concern,[7] there are significant countervailing considerations which weigh in favor of a literal construction of the statutory language. Prior to 1938, a longshoreman who opted to accept compensation payments automatically lost his right to proceed against the shipowner. In that year, Congress amended the act to provide that a statutory assignment occurs only upon the entry of "an award in a compensation order." The concerns prompting this amendment were twofold. First, by predicating the longshoreman's loss of his third party rights upon the entry of a formal award, Congress sought to ensure that he and his family would not unknowingly sacrifice a potential right of action against the shipowner merely by accepting voluntary compensation payments during a time of financial need. Second, by making the statutory assignment contingent upon entry of an award, the longshoreman would be given the opportunity "to consider the acceptance of compensation from the employer with the resulting loss of right to bring suit in damages against the third party, or a refusal of compensation so as to pursue the remedy against the third party alleged to be liable for the injury." H.R.Rep.No. 1945, 75th Cong.3d Sess. at 9 (1938), *quoted in Cupo v. Isthmian S. S. Co.,* 56 F.Supp. 45, 47 (S.D.N.Y.1941). *See Rother v. Interstate and Ocean Transport Co., supra.* Under this scheme, it was recognized that "mere acceptance of compensation payments does not preclude an injured employee from thereafter electing to sue a third party tortfeasor." *American Stevedores, Inc. v. Porello,* 330 U.S. 446, 456, 67 S.Ct. 847, 853, 91 L.Ed. 1011 (1947).

Congress eventually came to believe that the choice between electing to obtain a formal compensation award or suing a culpable third party "work[ed] a hardship on an employee by in effect forcing him to take compensation under the act because of the risks involved in pursuing a lawsuit against a third party." S.Rep.No. 428, 86th Cong. 1st Sess. 2, *reprinted in* [1959] U.S.Code Cong. & Ad.News 2134. It therefore amended the act to give the longshoreman the option of accepting compensation by an award and also commencing a third-party action within six months after the entry of a compensation award. Act of August 18, 1959, Pub.L. 86–171, 73 Stat. 391, *codified at* 33 U.S.C. § 933(a) and (b). However, nothing in this amendment altered the established principle that acceptance of compensation payments without an award was insufficient to trigger a statutory assignment.

■ A singular emphasis, then, in the history of the act is that a longshoreman's election to forego permanently his third-party right of action is not to be lightly implied. As the Second Circuit recently noted:

The legislative history of the statute as outlined by the Supreme Court and ourselves in *Rodriguez,* makes clear that Congress' purpose was to provide the injured longshoreman, after he knows what his award of compensation benefits will be, with a period of six months within which to decide whether in light of all of the circumstances, including the settlement arrived at with the employer without proof of any fault, to bring an action against a third party seeking damages based on its negligence. The longshoreman cannot be expected to make an intelligent decision of this issue until he is in a position to appraise the full nature and

---

7. The claims procedure as set out in 20 C.F.R. § 702.201 *et seq.* is extensive. Thus, there is some validity to the Fourth Circuit's theory that requiring an employer to controvert a claim perfunctorily in order to preserve its assignment rights cuts against the act's policy of encouraging prompt payment of compensation claims. This is, however, mitigated by several factors. First, if an agreement is reached at an informal conference, the deputy commissioner is required, if requested by either party, to file a

compensation order embodying the terms of the settlement. 20 C.F.R. § 702.315. Thus, an employer who wishes to make compensation payments and preserve its assignment rights need only reach the first stage of the claims procedure to do so. Moreover, nothing prevents an employer from paying benefits to the longshoreman while the claim is being adjudicated. The employee is thereby not necessarily deprived of compensation merely because the employer chooses to seek entry of an award.

extent of his injuries and the shipowner's negligence, and until he knows the total amount of compensation which he can be sure of receiving from the employer or its insurer. To hold otherwise would be to force the longshoreman to proceed in the dark. On the other hand, once he is armed with information as to the total benefits he will receive from the insurer, he can, with knowledge of the seriousness of his injuries and the extent of the shipowner's negligence, intelligently decide whether an action for damages against the shipowner would be likely to yield him any recovery over and above the compensation benefits plus the fee he would be required to pay to his attorney. *Verderame v. Torm Lines, supra,* 670 F.2d at 6–7. By predicating the commencement of the longshoreman's election period upon the entry of a compensation award which sets the amount of benefits to be paid, section 33(b) precludes the longshoreman from being forced to make a choice between accepting voluntary payments and refusing to accept them so as not to compromise his third-party rights. He need only make such a choice when the amount he is to receive is fixed by an award and he has time to determine whether it is in his best interests to pursue third-party recovery.[8] Of equal significance, the entry of the award unequivocally puts the longshoreman on notice that he has six months within which to exercise his third-party rights. The Fourth Circuit's expansive approach cuts directly against these fundamental policies by permitting a statutory assignment to occur before the longshoreman knows if the amount of compensation he will receive is adequate, and before he has an opportunity to determine the likelihood of success in a negligence action against the shipowner.

Defendant asserts two additional arguments in support of its position, neither of which have merit. First, it contends that the decisions which run *contra* to those in the Fourth Circuit have been nullified by *Rodriguez.* However, the Supreme Court decision in *Rodriguez* discussed only the implications of the longshoreman's failure to bring suit within six months after the entry of an award. The Court did not reach the issue of what constitutes "an award in a compensation order".[9] *See Fearson v. Johns-Manville Sales Corp., supra,* 525 F.Supp. at 675. Second, defendant points to certain deposition testimony by John McTaggert, an assistant deputy commissioner, who stated that 95 percent of all longshoreman's compensation claims are settled without a formal award and argues that the Fourth Circuit's approach more clearly comports with the prevailing practice under the act. However true this may be, it does not provide me with *carte blanche* to rewrite the statute. Much of the LHWCA's compensation scheme represents an elaborate structuring of the rights of longshoremen, stevedores, and shipowners. "[Section 33(b)'s] six-month rule represents a balancing of interests. Various provisions of the Act, while apparently unrelated, represent legislative trade-offs between the interests of these three concerned parties." *Del Re v. Prudential Lines, Inc.,* 669 F.2d 93, 95 (2d Cir. 1982), *petition for cert. filed,*

---

8. This factor is significant because it implicates not only the strength of the longshoreman's liability claim against the shipowner but also the amount of any potential judgment. The employer, or his compensation carrier, is entitled to assert a judicially created lien upon the proceeds of any third-party recovery. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 269–70, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979); *The Etna,* 138 F.2d 37 (3d Cir. 1943); *Fontana v. Pennsylvania R. Co.,* 106 F.Supp. 461, 463 (S.D.N.Y.1952), *aff'd sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir. (per curiam), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). Moreover, the longshoreman is obligated to pay counsel fees, invariably on a contingency basis "off the top" of a payment from the shipowner. *See Incorvaia v. Hellenic Lines, Ltd.,* 668 F.2d 650 (2d Cir. 1982), *petition for cert. filed* 50 U.S.L.W. 3998.-03 (U.S. June 9, 1982) (No. 81–2258). Thus, until he knows the total amount of compensation to which he is entitled, the longshoreman simply is not in a position to determine whether he will receive any return on a recovery against the shipowner.

9. Indeed, the court explicitly refrained from deciding this issue which was addressed by the Court of Appeals. *Rodriguez, supra,* 451 U.S. at 598–99, n. 3, 101 S.Ct. at 1948 n. 3.

50 U.S.L.W. 3998.20 (U.S. June 3, 1982) (No. 81–2315). If this delicate balancing has taken a list, it is a matter for Congress to rectify.

For all the foregoing reasons, defendant's motion for summary judgment will be denied.