Gaetano SCOZZARI, Plaintiff,

v.

JADE CO., INC., Defendant and Third-Party Plaintiff,

v.

AMERICAN STEVEDORES, INC., Third-Party Defendant.

No. 70–C–196.

United States District Court, E. D. New York.

Sept. 29, 1972.

Camarda & Scibilia, Brooklyn, N. Y., for plaintiff (Diego Camarda, Brooklyn, N. Y., of counsel).

Burlingham, Underwood & Lord, New York City, for defendant and third-party plaintiff (William M. Kimball, New York City, of counsel).

Alexander, Ash, Schwartz & Cohen, New York City, for third-party defendant, and Northern Assurance Co. of America (Sidney A. Schwartz, Martin M. Baxter, New York City, of counsel).

BARTELS, District Judge.

Gaetano Scozzari, a longshoreman employed by American Stevedores, Inc. (Stevedore), was injured in unloading the vessel "THIRA" owned by the defendant Jade Co., Inc. (Jade) which he sued alleging that the injury was caused by the unseaworthiness of the vessel. Jade impleaded Stevedore as a third-party defendant, and after a trial, without a jury, judgment was rendered

on April 12, 1972, in Scozzari's favor against Jade for $3,798.36. The third-party action was then settled and an order entered discontinuing the same with prejudice. At the trial counsel for Stevedore (Alexander, Ash, Schwartz & Cohen, Esqs.) vigorously opposed plaintiff's claim both as to liability and quantum of recovery. The amount of the judgment was thereafter deposited in court by counsel for Jade (Burlingham, Underwood & Lord, Esqs.) and thereupon Stevedore and Northern Assurance Company of America (Assurance Company), the compensation insurer for Stevedore (being also represented by Alexander, Ash, Schwartz & Cohen, Esqs.) both moved this court for an order pursuant to 28 U.S.C. § 2042, directing payment to the Assurance Company of $2,383.30, the amount of its compensation lien, from the money on deposit. Plaintiff's attorney, Diego Carmada, Esq., opposed the deposit of the money in court[1] and also the priority of the Assurance Company's lien and simultaneously moved that his lien of $1,700 be deducted from the judgment before the alleged compensation lien of $2,383.30 be paid to the Assurance Company.

The issue posed is whether the compensation lien takes priority over the plaintiff's attorney's lien created by Section 475 of the New York Judiciary Law, McKinney's Consol.Laws c. 30, in the distribution of the proceeds of the judgment. The problem does not arise where recovery obtained by plaintiff is high enough to satisfy both claims. There is a conflict, however, between a compensation lien and plaintiff's attorney's contingent fee lien in cases where (1) recovery is smaller than the compensation lien, and (2) recovery is higher than the compensation lien but not high enough to satisfy both claims if the attorney's lien is given priority or if the compensation lien is given priority and the attorney's lien is predicated upon the full amount of recovery. Stevedore and the Assurance Company contend that in such case the attorney's lien is subordinate to the compensation lien and should be calculated upon the remainder. Plaintiff's attorney asserts that his lien is entitled to priority and that the compensation lien should be taken from the remainder. In the first class of cases the amount of plaintiff's recovery is unaffected by the result since there would never be sufficient funds remaining for any personal recovery regardless which claim received priority. However, in the second class of cases plaintiff would receive some recovery if the compensation lien was accorded priority and the attorney's lien predicated upon the remainder. In this case the attorney's lien, which was a contingent fee predicated upon a sliding scale, would approximate $1,700 if based upon the total recovery before deduction for the compensation lien, and plaintiff would receive nothing, and if based upon a net recovery after deduction of the compensation lien[2] would aggregate $660, and plaintiff would receive $740.

The Longshoremen's and Harbor Workers' Compensation Act (Act), 33 U.S.C. § 933 et seq., specifically sets

---

1. In view of the conflicting claims against the fund, deposit in court was a proper procedure. See Russo v. Flota Mercante Grancolombiana, 303 F.Supp. 1404 (S.D. N.Y.1969) ; Spano v. N. V. Stoomvaart Maatschappij Nederland, 340 F.Supp. 1194 (S.D.N.Y.).

2. The following computations illustrate the problem involved:
(1) If the attorney's lien is deducted first, there will be insufficient funds to satisfy the compensation lien, and there will be no recovery for the plaintiff, as computed below:

$3,800  judgment
− 1,700  attorney's lien
─────
$2,100
 2,400  compensation lien
─────
− $ ·300

(2) If the compensation lien is deducted first, the attorney will receive only 40% of what he would have received if his lien

forth the order of distribution of proceeds where an employer has instituted an action in behalf of an employee. For some unknown reason there is no provision which sets forth a similar order of distribution when recovery has been obtained by the employee himself. Under the provisions of the Act, the employee may recover damages against a third-party tortfeasor notwithstanding prior payment of compensation by the employer (§ 933(a)); if payment is made by the employer involuntarily but pursuant to an award, the acceptance of the compensation by the employee operates as an assignment to the employer of any claim by the employee against the third-party up to the amount of the payment, unless the employee institutes an action within six months of the award (§ 933(b)).[3] Section 933(e) sets forth the scheme of distribution of the proceeds of any recovery by the employer on account of such assignment, as follows: the employer shall retain (a) the expenses of the proceedings, including a reasonable attorney's fee as determined by the Commissioner; (b) all benefits actually furnished by the employer to the employee, such as medical services and supplies; (c) compensation paid to employee; and (d) the value of the compensation thereafter payable plus (e) one-fifth of any excess recovery. Thereafter the remainder of the excess recovery must be paid to the employee. Where the employer is insured, the compensation insurer is subrogated to the rights of the employer (§ 933(h)).

### Statutory Interpretation

If the employer wishes to eliminate any question as to whether the compensation lien or the plaintiff's attorney's lien is entitled to priority, he may do so by promptly instituting an action himself in behalf of the employee, in which case he would be entitled to receive under the statute credit for his attorney's fees prior to the lien of the compensation carrier and would not have to share any legal fees of the plaintiff's attorney. There appears to be no logical reason why there should be any difference if the action is instituted by the employee instead of the employer. Senate Report No. 428, accompanying the 1959 amendment to the Act, indicates that if the employer pays the employee's compensation, he is to be reimbursed only out of the *"net proceeds of the recovery."* [4] Apparently the report was referring to a fund created by the suit instituted by plaintiff. "Net proceeds of the employee" according to ordinary usage, would seem to mean proceeds net of plaintiff's attorney's fee and other expenses necessary to secure the fund. In construing this statute, it is pertinent to recall that the statute was framed and based upon the New York law. As stated in Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949), "The federal statute [Longshoremen's and Harbor Workers' Compensation Act] is based

---

were deducted first but the plaintiff would recover $740, as computed below:

$3,800 judgment
− 2,400 compensation lien

$1,400
− 660 attorney's lien (50% of first thousand, 40% of second and third thousand)

$ 740 plaintiff's recovery

3. While not expressed in the statute, the assignment is nevertheless operative even

though the employee institutes the action within the time limit. See The ETNA, 138 F.2d 37, 41 (3d Cir. 1943).

4. The pertinent portion of Senate Report No. 428 reads as follows: "The bill, as amended, provides that an employer must be reimbursed for any compensation paid to the employee out of the *net proceeds of the recovery.*" (Emphasis added.) U.S. Code Cong. & Admin.News, p. 2135 (1959).

upon New York law." Section 29, subdivision (1), of the New York Workmen's Compensation Law, McKinney's Consol.Laws c. 67, specifically provides that when an employee recovers from a third party, the compensation lien is to be satisfied *"after* the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery * * *." See Ocean S.S. Co. v. Lumbermens Mutual Casualty Co., 125 F.2d 925 (2d Cir. 1942).[5] Following the precedent of the New York statute as well as logic, it would appear that the attorney's lien is entitled to priority.

### Case Law

The question of priority of these liens has come before this court a number of times in various factual patterns. A number of cases are cited by Stevedore in support of its position, such as Fontana v. Pennsylvania R. Co., 106 F. Supp. 461 (S.D.N.Y.1952), aff'd, 205 F. 2d 151 (2d Cir. 1953), cert. denied, Fontana v. Huron Stevedoring Corp., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953); Davis v. United States Lines Co., 253 F.2d 262 (3d Cir. 1958); Ashcraft and Gerel v. Liberty Mutual Insurance Co., 120 U.S.App.D.C. 51, 343 F.2d 333 (1965). These cases simply hold that where recovery or settlement is sufficient to cover both liens, there is no reason to impose upon the employer or the compensation carrier the obligation of ratably sharing in the plaintiff's attorney's fees. They did not face the question of the priority of liens when the judgment was insufficient to cover both. In fact, the following quotation from Judge Weinfeld's opinion in *Fontana, supra,* clearly indicates just that:

"* * * * There is no reason why a recovery obtained against the third party by the employee rather than the employer should be distributed differently. The expense of securing the recovery is, as in equity it should be, a first charge against the fund itself. As such it is immaterial whether the fund was created in a suit brought by the employer or one brought by the employee. * * *." (106 F.Supp. at 464.)

The other fairly recent cases cited by Stevedore, i. e., Russo v. Flota Mercante Grancolombiana, 303 F.Supp. 1404 (S. D.N.Y.1969); Spano v. N. V. Stoomvaart Maatschappij Nederland, 340 F. Supp. 1194 (S.D.N.Y.1971); Riddick v. Rederi A/B Fredrika, 271 F.Supp. 360 (E.D.Va.1967); and Nacirema Operating Co. v. Oosting, 330 F.Supp. 1034 (E.D.Va.1971), do face the problem presented in the instant case and hold that the compensation lien has priority. Three of these cases purport to follow *Fontana, supra; Davis, supra;* and *Ashcraft and Gerel, supra,* and the others advance various reasons for according priority to the compensation carrier. *Fontana* and *Davis,* as pointed out above, are factually distinguishable; and as far as *Fontana* is applicable at all, it supports the priority of the plaintiff's attorney's lien. Among the reasons given in the other cases is that at the trial the employer vigorously opposed the employee and consequently the plaintiff's attorney in no way represented the employer. But this would seem to make no difference if in actuality the plaintiff's attorney created a fund from which the employer received a definite benefit not otherwise available. We find also a distinction between a case where the employer is asserting a lien and the compensation car-

---

5. In a letter to the Chairman of the Senate Committee on Labor and Public Welfare, the Secretary of Labor stated that "In general, H.R. 451 appears to follow the pattern of the New York workmen's compensation law * * *." U.S.Code Cong. & Admin.News, p. 2136 (1959).

rier is asserting a lien. While it might be said that the employer is antagonistic to the plaintiff, it hardly can be asserted that the compensation carrier is antagonistic to the plaintiff's cause. It is understandable that an employer who might be liable to the shipowner upon his indemnity or warranty would oppose any recovery on the part of the plaintiff, but no such argument can be advanced in favor of the compensation carrier where the compensation carrier has not intervened at the trial and opposed the plaintiff or has not waged war with the plaintiff against the shipowner in order to create the fund. *Cf.* Haynes v. Rederi A/S Aladdin, 362 F.2d 345 (5th Cir. 1966). In other words, the interest of the employer and the compensation carrier is vis-a-vis the plaintiff often diverse. The employer is frequently interested in defeating plaintiff's claim, while the compensation carrier seldom has such an interest, and therefore it cannot be harmed but can only be benefitted by any judgment in favor of the plaintiff unless the compensation insurer is at the same time the employer's liability insurer and thus placed in a dual and conflicting position.

Another argument advanced by the above authorities where the fund is insufficient to satisfy both liens is that little or nothing is left for the plaintiff if his attorney is accorded priority. This is frequently true in every case where an attorney's lien has priority and the fund is insufficient to cover all claims.

While we conclude that the Congressional intent would be best served by a rule which would not grant the compensation lien priority, resulting in the discouragement of suits by longshoremen's attorneys, we are also persuaded that it would be inequitable to permit under these circumstances an injured worker to receive nothing while his counsel receives a substantial fee. In Chouest v. A & P Boat Rentals, Inc., 5th Cir., April 10, 1972, Slip Op. 71-1696, 40 U.S.L.W. 2744 (1972), the Fifth Circuit denied the compensation lien a priority where the fund was insufficient to cover both liens and, in addition, divided the gross recovery so as to tax both the plaintiff and the compensation carrier for their proportional shares of litigation expenses, including both attorney's fees and other costs and fees. In reaching this conclusion, the court said:

"  *  *  *  it is crucial to the preservation of a viable, unencumbered right of action against third parties to insure that attorneys who will be engaged to bring such actions are fairly paid for their efforts. If an unfair rule of fee allocation dampens the willingness of the bar to undertake third party actions on behalf of employees, the employees' right to sue third parties is to that extent restricted."

While in the absence of Congressional enactment, this court hesitates to follow the formula of allocation delineated in *Chouest* [6] by the Fifth Circuit, it concludes, as a matter of fundamental fairness, that the plaintiff's attorney should not be permitted to walk away with his fee leaving plaintiff with nothing, unless as part of the fee agreement counsel obtained, in advance, a written consent of plaintiff to such a potential result. In the absence of such an agreement or consent, we believe plaintiff might be entitled to a reformation of the agreement upon the ground of mutual mistake. At all events, under the circumstances of this case we believe, as a matter of equity, that plaintiff's counsel, as an officer of this court, should share his recovery equally with plaintiff.

So ordered.

---

6. Chouest, *supra*, at 21–22.