Jorge OCHOA, Plaintiff-Appellant,

v.

EMPLOYERS NATIONAL INSURANCE CO. et al., Intervenors-Appellees,

Waterman Steamship Corp., Defendant.

No. 82–3618.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1984.

Rehearing and Rehearing En Banc Denied April 18, 1984.

Owen J. Bradley, Michael R. Guidry, New Orleans, La., for plaintiff-appellant.

Thomas W. Thorne, Jr., New Orleans, La., for Employers & N.O. Stevedores.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Our question is how to allocate money, recovered from a negligent shipowner, as among the injured longshoreman, his attorney, and the stevedore's insurance carrier. We must apply *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), to a case in which the recovery is insufficient to cover both the attorney's fee and the compensation carrier's lien. The district court awarded full reimbursement to the compensation carrier at the expense of the attorney.[1] We reverse.

1. *The Case Below*

 ■ The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976) ("the Act"), authorizes an injured longshoreman to bring suit against the responsible party—usually the owner of the vessel on which the injury occurred—within six months after receiving a compensation award. 33 U.S.C. § 933(a), (b). Longshoreman Jorge Ochoa brought suit and recovered $62,058 from Waterman Steamship Corporation for injuries sustained while unloading Waterman's vessel. The stevedore's compensation carrier, Employers' National Insurance Company ("ENI"), intervened in the suit to recover

---

1. On this appeal all have assumed that the agreement between Ochoa and his attorney set the fee at 40% of the total recovery against the shipowner. At oral argument we were given a retainer agreement, signed by Ochoa, which assigns 50% of "any claim or suit I have or may have in this matter" to the attorney. The compensation carrier denies that Ochoa's agreement with his attorney is to commit a fee computed on the total recovery rather than on what Ochoa receives after the compensation repayment is deducted. If the carrier were correct, there would be no problem, and the carrier would enjoy the priority given it by the trial court's judgment.

medical expenses and compensation benefits,[2] which totalled $42,024 paid to Ochoa by the time of the judgment. The expenses of the litigation aside from the attorney's fee were $6,263.[3] The $55,795 remaining would produce an attorney's fee, at 40% of recovery, of $22,318. If that fee were allowed, the compensation carrier would then recover only $33,477, considerably less than the $42,024 required for full reimbursement. On the other hand, if we allowed the compensation carrier the full $42,024, the remaining $13,771 would be considerably less than the $22,318 expected fee. Furthermore, if the attorney takes the $13,771, the longshoreman receives nothing from the recovery against the shipowner.

The original jury verdict was upheld on appeal. Due to additional benefits extended during the time of appeal, the verdict was inadequate to pay fully ENI's compensation lien and Ochoa's attorney's fee. ENI moved in the district court to amend the judgment to reflect ENI's entitlement to be reimbursed for the additional benefits. Ochoa's attorney opposed the motion, since granting it would leave insufficient funds to pay his fee. The district court granted the motion, and Ochoa appeals.

We conclude that a reasonable fee is an expense of the suit that must be deducted before the compensation carrier or stevedore can be reimbursed. If there is nothing left after that computation of expenses and after the compensation carrier's recovery, the trial court should then consider the reasonableness of the recovery as between the longshoreman and his attorney under all of the circumstances and adjust that allocation in favor of the longshoreman if equity so requires.

## 2. The Stipulation

During the course of the trial the longshoreman through his attorney stipulated with the intervening carrier the amount of the compensation benefits and medical expenses paid to Ochoa or for his benefit. That stipulation stated that this sum would "take precedence over all other claims of plaintiff" if any damages were recovered by plaintiff. The trial court considered that this agreement gave priority to the carrier over the payment of attorney's fees. We do not construe it to have that effect. The objective of the agreement was to resolve any question about the sum of the carrier's payments.[4] Under the law, that repayment does precede payments to the plaintiff longshoreman. We would not construe the agreement to change the legal rules for the payment of the expenses of the suit, in which both intervenors and plaintiff are interested, without language clearly to that effect. See *Lamar v. Admiral Shipping Corp.*, 476 F.2d 300, 303 (5th Cir.1973) (longshoremen stipulated that compensation benefits would be repaid to stevedore's carrier free of any claim for attorneys' fees).

## 3. *Prior to* Bloomer

We now return to a question we have faced previously, although against a different background. In *Strachan Shipping Co. v. Melvin*, 327 F.2d 83 (5th Cir. 1964), we framed the question for decision: "which of the two liens [a reasonable attor-

---

**2.** When a longshoreman recovers from a negligent shipowner, the stevedore has a lien against the recovery in the amount of the stevedore's compensation payments. *See The Etna,* 138 F.2d 37 (3d Cir.1943). The stevedore's compensation insurance carrier often occupies the place of the stevedore. For purposes of this opinion, there is no difference between the entitlement of "stevedore," "compensation carrier," or "carrier."

**3.** There will be an issue upon remand over the correct amount of expenses, as there may be on other figures used herein. If so, that will be for the trial court to resolve.

**4.** In *Chouest v. A & P Boat Rentals, Inc.,* 472 F.2d 1026 (5th Cir.1973), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973), the stevedore's insurance carrier thought that a pretrial stipulation guaranteed the carrier full recoupment of its compensation payments. The *Chouest* court refused to give the stipulation the effect urged by the carrier. Instead, the court construed the stipulation to reflect an agreement only as to the *amount* of the medical and compensation payments. *Id.* at 1029, 1031.

ney's fee and the stevedore's subrogation lien] take priority when the recovery is insufficient to pay both liens in full." *Id.* at 84. We then affirmed the district court's holding that the longshoreman's attorney's fees were included in the expense of litigation, which was a first charge against the fund recovered from the third party tortfeasor.

Subsequent cases construing the Act and the 1972 amendments to the Act have significantly altered the setting in which *Melvin* was decided. In the present setting, however, we return to the rule that Ochoa's attorney's fees constitute an expense of suit, which must be satisfied before the stevedore's compensation lien attaches to the net recovery.

An injured longshoreman's cause of action is automatically assigned to the stevedore if the longshoreman does not institute suit within six months after receiving a compensation award. 33 U.S.C. § 933(b). The Act explicitly provides for the distribution of the stevedore's recovery on the longshoreman's cause of action. *See* 33 U.S.C. § 933(e). When the longshoreman sues, however, the Act is silent as to a method of distribution. "[F]illing this statutory lacuna" has been left to the courts. *See Mitchell v. Scheepvaart Maatschappij Trans-Ocean,* 579 F.2d 1274, 1280 (5th Cir.1978). Due to the lack of statutory specificity, the circuits have disagreed in their interpretations of how the Act applies to claims involving the longshoreman-stevedore-shipowner relationship. One principal dispute, now settled, was whether the stevedore could be charged with a portion of the longshoreman's attorney's fees. The circuits had split three ways on this question. *See Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74, 77 n. 3, 100 S.Ct. 925, 927 n. 3, 63 L.Ed.2d 215 (1980).

*Mitchell v. Scheepvaart Maatshappij Trans-Ocean,* 579 F.2d 1274 (5th Cir.1978), represented this circuit's equitable approach to the problem of distributing the longshoreman's tort recovery from a negligent shipowner among the longshoreman, his stevedore, and his attorney. The *Mitchell*

court refused to apply a priority rule that would rank claims to the fund on a measured, arithmetic basis. *Id.* at 1279. That approach would be unfair to the injured longshoreman in some circumstances. Instead, the court suggested "application of the equitable rule that he who reaps a harvest for another is entitled to share in the yield." *Id.* at 1278. Thus, trial courts were directed to inquire into the particular circumstances of a case to determine whether the stevedore should be required to contribute to a reasonable fee for the longshoreman's counsel.

### 4. Bloomer's Resolution

The Supreme Court resolved the different approaches among the circuit courts in *Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). The Court rejected the "equitable apportionment" theory of *Mitchell* and held that the stevedore's compensation lien cannot be taxed to pay part of the longshoreman's attorney's fees. The apportionment or contribution had been justified with the "common-fund" theory: because the longshoreman's attorney helped produce a fund out of which the stevedore was reimbursed for compensation payments, it was fair to charge the stevedore with part of the fee. To resolve the question the Court inquired into the legislative history and Congressional intent behind the Act. Under the Act's "comprehensive scheme," the stevedore is reimbursed after litigation costs, but before any recovery by the longshoreman, when it sues a shipowner pursuant to an assignment from the longshoreman. The stevedore, therefore, bears no part of its legal expense if the recovery covers those expenses and its compensation reimbursement. "There is no reason to believe that Congress intended a different distribution of the expenses of suit merely because the longshoreman has brought the action." *Id.* at 78, 79, 100 S.Ct. at 928.

### 5. *After* Bloomer

Despite *Bloomer's* clarification, another question has arisen: when the recovery is

insufficient to satisfy both the attorney's contingent fee (if properly calculated on the gross) and the compensation lien, which is entitled to be satisfied first? The Second Circuit and the Seventh Circuit, the only post-*Bloomer* courts to confront the question until now,[5] have reached opposite results. *Compare Incorvaia v. Hellenic Lines, Ltd., "Grigorios-C-IV"*, 668 F.2d 650 (2d Cir. 1982), *cert. denied*, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982) (reasonable attorney's fee has priority; compensation lien applies to net proceeds) *with Johnson v. Sioux City & New Orleans Barge Lines, Inc.*, 629 F.2d 1244 (7th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 987, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (attorney's contingent fee should be calculated on net recovery after satisfaction of compensation lien). Both *Incorvaia* and *Johnson* purport to be consistent with the intent of the Act, as interpreted in *Bloomer*.

It is important to note that the recovery in *Bloomer* was ample to pay substantial amounts to the stevedore, the longshoreman, and the longshoreman's attorney. Under the distribution approved by the Court, Bloomer received a net of over $22,700. Under the rejected approach Bloomer would have received over $28,400. Moreover, the Court stated clearly that it did not address the question of priority where a jury award was insufficient to satisfy both the compensation lien and the attorney's fees. *Bloomer*, 445 U.S. at 86 n. 13, 100 S.Ct. at 932 n. 13. "[N]othing in our decision suggests that the stevedore's lien has priority over the longshoreman's expenses." *Id.*

The conflicting results reached by the Second and Seventh Circuits are best explained by their focus on different aspects of *Bloomer*, applied in the context of an inadequate recovery. For example, the

Seventh Circuit in *Johnson* focused on one of the purposes of the 1972 amendments to the Act—to reduce litigation. *Johnson*, 629 F.2d at 1249. The *Johnson* court refused to figure the longshoreman's attorney's contingent fee on the gross recovery. That "approach, which gives the attorney a fee based on the benefit to the stevedore, encourages litigation brought nominally on behalf of the longshoreman in cases where the stevedore's interest is relatively greater than the longshoreman's." *Id.* By contrast, the Second Circuit in *Incorvaia* stressed the *Bloomer* Court's analysis of the Act's legislative history, which 'indicates that the compensation lien attaches only to the longshoreman's net recovery. *Incorvaia*, 668 F.2d at 652.

### 6. *Attorney's Fee An Expense of Suit*

We cannot avoid the conclusion that Congress intended the compensation lien to come out of the net recovery, after the costs of litigation, including reasonable attorney's fees, are subtracted. We are thus aligned with the Second Circuit in *Incorvaia*. *Accord Valentino v. Rickners Rhederei, G.M. B.H., SS Etha*, 552 F.2d 466 (2d Cir.1977).

In 1959, Congress amended the Act to eliminate the requirement that an injured longshoreman elect between collecting compensation benefits and suing a third party in tort. "The bill, as amended, provides that an employer must be reimbursed for any compensation paid to the employee out of the *net* proceeds of the recovery." S.Rep. No. 428, 86th Cong., 1st Sess. 2, *reprinted in* 1959 U.S.Code Cong. & Ad. News 2134, 2135 (emphasis added). The *Bloomer* Court noted:

The House version of the amendment would have provided: "[T]he carrier liable for the payment of . . . compensation

---

**5.** Since *Bloomer*, we have decided two cases involving apportionment under the Act. *See Pluyer v. Mitsui O.S.K. Lines, Ltd.*, 664 F.2d 1243 (5th Cir.1982); *LeBlanc v. Petco, Inc.*, 647 F.2d 617 (5th Cir.1981), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). In *LeBlanc*, the court applied *Bloomer* and reversed the district court, which had reduced the compensation lien by one-third. In *Pluyer*, af-

ter longshoreman Pluyer's total damages were reduced by the amount of his negligence, the recovery amounted to $35,536. After the stevedore's compensation lien of $25,640 was satisfied, a net of $9,896 was paid to Pluyer. Neither case contains any reference to attorney's fees. Moreover, there is no indication that in *Pluyer* or *LeBlanc* the recovery was insufficient to pay all claims.

shall have a lien on the proceeds of any recovery from [a] third person, whether by judgment, settlement, or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under, or provided, or estimated, by this Act...." H.R.Rep. No. 229, 86 Cong., 1st Sess., 6 (1959). The House passed this version of the amendment, 105 Cong.Rec. 5561–5562 (1959), but later concurred in the Senate version on the evidence [sic] assumption that the Senate version also adopted existing judicial practice. See *id.,* at 15343. *Bloomer,* 445 U.S. at 81 n. 6, 100 S.Ct. at 929 n. 6.

There is no indication that the 1972 amendments expressed any intent that the compensation lien be satisfied before reasonable attorney's fees are deducted from the third-party recovery.[6] The 1972 amendments eliminated the unseaworthiness remedy for longshoremen as well as the shipowner's third-party cause of action against the stevedore. These two changes were intended to reduce litigation and to conserve the resources of stevedores so that they would have sufficient funds to pay increased compensation benefits. *See* H.Rep. No. 1441, 92d Cong., 2d Sess. 5, *reprinted in* 1972 U.S.Code Cong. & Ad. News 4698–4705; *Bloomer,* 445 U.S. at 83–85, 100 S.Ct. at 930–31.

The changes effected by the 1972 amendments—increased compensation benefits, abolition of the unseaworthiness remedy, and elimination of the shipowner's cause of action against the stevedore—no doubt helped accomplish the purpose of achieving a reduction in litigation. We decline, however, to read into those amendments an intent to reduce litigation initiated by long-

shoremen against negligent shipowners. By assuring the vitality of the longshoremen's third-party cause of action we not only promote the longshoreman's interest, but also assist in conserving stevedore resources, one of the purposes behind the 1972 amendments. Because stevedores are assured of having their compensation liens satisfied from net recoveries, longshoremen's third-party suits inure to the benefit of stevedores. If we were to accept the approach proposed by ENI we would unduly impede the ability of longshoremen to avail themselves of the remedy provided by Congress. "[P]ermitting the compensation lien to come ahead of the attorney's lien would deter counsel from pressing longshoremen's claims on a contingent fee basis except 'where a recovery substantially in excess of the amount of the stevedore's lien is a virtual certainty.'" *Incorvaia v. Hellenic Lines, Ltd., "Grigorios-C-IV",* 668 F.2d 650, 653 (2d Cir.1982) (quoting *Valentino v. Rickners Rhederei, G.M.B.H., SS Etha,* 552 F.2d 466, 469 (2d Cir.1977)).

We think that our holding coincides with the Act's "comprehensive scheme," as interpreted in *Bloomer.* The same rationale that persuaded the Court to hold that the longshoreman should bear fully his own legal expenses, *Bloomer,* 445 U.S. at 85, 100 S.Ct. at 931, persuades us to maintain the symmetry of the Act.[7] It would be incongruous to favor the compensation lien over the longshoreman's attorney's fee in distributing a longshoreman's tort recovery when the Act specifically provides that, when the stevedore sues on the longshoreman's claim, expenses, including a reasonable attorney's fee, shall be reimbursed before the compensation lien is paid. 33 U.S.C. § 933(e). When using the term "legal expenses" in *Bloomer,* it is clear that the Court contemplated attorney's fees as being included in

---

6. "[T]o the extent that the 1972 amendments offer guidance, they strongly suggest that the rule for payment of attorney's fees, was not intended to be altered." *Bloomer,* 445 U.S. at 85, 100 S.Ct. at 931.

7. *See Davis v. United States Lines Co.,* 253 F.2d 262, 265 (3d Cir.1958) (to "renounce the rule of *Fontana* [*v. Pennsylvania R.R. Co.,* 106

F.Supp. 461 (S.D.N.Y.1952), *aff'd sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir.1953) (per curiam), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953) (compensation lien attaches only after attorney's fees are deducted)] would be to rob the statute of symmetry and logic").

those expenses. *See Bloomer*, 445 U.S. at 76 n. 2, 77 n. 3, 84 n. 9, 100 S.Ct. at 927 nn. 2 & 3, 931 n. 9. In footnote six of *Bloomer* the Court cited legislative history stating that the longshoreman was entitled to deduct his expenses from the third-party recovery. *Id.* at 81 n. 6, 100 S.Ct. at 929 n. 6. Footnote six then directs the reader to footnote 13, which discusses *Fontana v. Pennsylvania Railroad Co.*, 106 F.Supp. 461 (S.D. N.Y.1952), *aff'd sub nom. Fontana v. Grace Line, Inc.*, 205 F.2d 151 (2d Cir.1953) (per curiam), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). Under *Fontana*, "the expenses of suit, including attorney's fees, represent the first charge on the recovery against the third party." *Bloomer*, 445 U.S. at 86 n. 13, 100 S.Ct. at 932 n. 13. *See Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026, 1034 n. 13 (5th Cir.1973), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973).

### 7. *Reasonableness of the Fee*

■ By holding that attorney's fees are part of the longshoreman's expenses that are recovered prior to satisfaction of the compensation lien, we stress that only *reasonable* attorney's fees are allowed. In every case involving distribution of a longshoreman's tort recovery, district courts should assess the reasonableness of the longshoreman's attorney's fee. *See Cappel v. Adams*, 434 F.2d 1278 (5th Cir.1970) (reasonableness of attorney's contingent fee contract within court's discretion.); *see also Johnson v. Sioux City & New Orleans Barge Lines, Inc.*, 629 F.2d 1244, 1248 n. 6 (7th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 987, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). We continue to "reject any formula under which the plaintiff's contract with counsel would automatically govern" the amount or percentage of the longshoreman's attorney's fee. *Mitchell v. Scheepvaart Maatschappij Trans-Ocean*, 579 F.2d at 1282. Our cases have approved of percentage contingent fees not because plaintiff's contract governed, but because the court determined that such fees were reasonable. *See id.* at n. 11 (citing *Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026 (5th Cir.

1973), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973), and *Strachan Shipping Co. v. Melvin*, 327 F.2d 83 (5th Cir.1964)); *see also Incorvaia v. Hellenic Lines, Ltd., "Grigorios-C-IV"*, 668 F.2d 650, 653 n. 4 (2d Cir.1982), *cert. denied*, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982) ("reasonableness of the attorney's fee may be challenged, lest it encroach unduly on the net proceeds").

### 8. *Allocation of the Recovery*

Subject to a contrary agreement between the affected parties, the allocation of the money recovered from a negligent third party is made in the following manner. First, the out of pocket expenses are deducted. Then the attorney's fee, if the court approves it as reasonable, is deducted. The carrier's repayment then takes priority. In the present case, after deducting expenses of $6,263 there is $55,795 for allocation. If the attorney is entitled to a reasonable fee of 40% of that amount, the sum of $22,318 is deducted for that purpose. The balance, and no more, of $33,477 goes to the compensation carrier.

### 9. *Equitable Adjustment*

■ We acknowledge that in some circumstances, our holding has the potential for producing inequitable results. This is the case where the longshoreman's attorney receives a substantial fee by applying the percentage to the gross recovery, but the longshoreman receives little or nothing because the stevedore's compensation lien consumed the net. *See Strachan Shipping Co. v. Melvin*, 327 F.2d 83, 86–94 (5th Cir.1964) (Brown, J., dissenting) (*Melvin* rule without adjustment subordinates interest of injured worker to that of lawyer on contingent fee); *see also Incorvaia*, 668 F.2d at 653 n. 4 (contrasting concededly reasonable fee of one-third of modest verdict in *Incorvaia* with "undesirable consequences" produced by a 40% attorney's fee applied to substantial recoveries, illustrated by Judge Brown's dissent in *Melvin*). The fairness of the final allocation between the longshoreman and his attorney is a different matter from

the reasonableness of the attorney's fee for services rendered in obtaining the total recovery from the negligent tortfeasor. Others have perceived unfairness in a situation where payment of a substantial attorney's contingent fee and the compensation lien leaves a small amount or nothing for the injured longshoreman. For example, the *Mitchell* court noted that plaintiff's counsel declined to charge a one-third contingent fee based on the gross recovery. Describing such a fee as "grossly unjust," plaintiff's counsel instead charged the client one-third of the net recovery. *Mitchell,* 579 F.2d at 1278 n. 6.

In *Scozzari v. Jade Co.,* 350 F.Supp. 801 (E.D.N.Y.1972), the court construed the Act and concluded that the compensation lien attaches to "proceeds net of plaintiff's attorney's fee and other expenses necessary to secure the fund." *Id.* at 804. The *Scozzari* court then considered the case where the fund is insufficient to cover both the attorney's fee and the compensation lien and noted that "it would be inequitable to permit ... an injured worker to receive nothing while his counsel receives a substantial fee." *Id.* at 806. The court held, as a matter of equity, that plaintiff's counsel "should share his recovery equally with plaintiff." *Id. Contra Valentino v. Rickners Rhederei, G.M.B.H., SS Etha,* 552 F.2d 466, 470 n. 5 (2d Cir.1977) (longshoreman's attorney cannot share fee with longshoreman).

We think that the *Scozzari* approach is commendable, although we decline to set any certain division between attorney and client in insufficient recovery cases. District courts, however, have discretion to adjust an attorney's fee so that the injured longshoreman can share in the recovery. In reviewing the matter, the court should consider whether it is reasonable and equitable for the attorney to recover, for example, $22,318, while the injured longshoreman receives nothing. If the attorney has earlier obtained a fee for securing compensation benefits for the longshoreman, a double recovery should be avoided.[8] District courts should take care not to impair the incentive of counsel. A fair return for the attorney should be allowed, determined under all the circumstances.[9] With that consideration in mind, however, the trial court in the exercise of discretion may require an adjustment to assure equity for both the longshoreman and his attorney.

We do not think that *Bloomer* prevents this equitable adjustment. *Bloomer* clearly does not allow an adjustment of the stevedore's recovery to contribute toward the longshoreman's attorney's fees. By contrast, our adjustment operates only as between the longshoreman and his attorney. The compensation lien on the net recovery remains inviolable, consistent with *Bloomer.* Allowing an equitable adjustment between longshoreman and attorney, however, mitigates the effect of that rule in insufficient recovery cases.

The District Court's judgment of September 20, 1982, amended September 24, 1982, is reversed. The case is remanded for reconsideration and reallocation of the original recovery consistent with this opinion.

REVERSED and REMANDED.

WISDOM, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion reflects a thoughtful and conscientious effort to come to grips with a difficult problem. I cannot concur, however, because I find the result irreconcilable with the Supreme Court's interpretation of the Act in *Bloomer.*

As the majority recognizes, *Bloomer* held that "the stevedore's compensation lien cannot be taxed to pay part of the longshoreman's attorney's fees". 724 F.2d at 1174. In *Bloomer,* the Supreme Court repeatedly stressed that Congress intended that the

---

8. *See Johnson,* 629 F.2d 1244, 1248–49 (to prevent double recovery, Act does not allow attorney, who was awarded fee for securing compensation award, later to receive a fee calculated on gross tort recovery that includes compensation lien).

9. We maintain "our concern with fair reimbursement for lawyers who represent employees in third party actions." *See Chouest,* 472 F.2d at 1034 n. 13.

stevedore should recover "the full amount" of its lien from the third-party recovery and that the longshoreman's legal fees should be borne by the longshoreman "alone".[1] Yet the unavoidable result of the majority's approach is to defeat a full recovery by the stevedore by effectively forcing it to pay part of the longshoreman's attorney's fees. Under the majority's approach, Mr. Ochoa's attorney will recover $22,318 (subject to equitable adjustment) and ENI will recover $33,477. If ENI had been granted priority, however, it would have recovered the full amount of its compensation lien—$42,025. By granting priority to the attorney's fees, the majority in effect compels ENI to pay $8548 of those fees. This amount is 38 percent of the fees; if the district court decreases the attorney's fees under its power of equitable adjustment, the percentage paid by ENI will increase even further. I cannot reconcile this result with *Bloomer*.

As the Second Circuit did in *Incorvaia*, the majority finds support for its position in the legislative history of the 1959 amendments to the Act. *See* 724 F.2d at 1175–1176; *Incorvaia*, 668 F.2d at 652. Such reliance is misplaced, for the 1959 amendments were designed specifically to facilitate third-party suits. *See Bloomer*, 445 U.S. at 80, 100 S.Ct. at 929. This congressional purpose was modified in the 1972 amendments, the primary purposes of which were to reduce litigation and to conserve stevedores' resources so that the stevedores would be better able to pay the substantial increases in compensation benefits mandated by the 1972 amendments:[2]

> "The legal expenses incurred by stevedores in connection with third-party actions were understood to be a major obstacle to the funding of increased compensation payments. Numerous witnesses testified that third-party actions frequently inured to the benefit of lawyers, depleting the stevedore's resources and congesting the courts without aiding the injured employee."

*Bloomer*, 445 U.S. at 85, 100 S.Ct. at 931; *see also id.* at 82–86, 100 S.Ct. at 930–932; *Johnson*, 629 F.2d at 1249.

The majority acknowledges these purposes behind the 1972 amendments, but responds by arguing that its approach will ultimately aid stevedores by encouraging third-party suits and thus making it more likely that stevedores will receive reimbursement for the compensation payments. *See* 724 F.2d at 1176. The exact same argument was made, and rejected by the Supreme Court, in *Bloomer*. *See* 445 U.S. at 86 & n. 12, 100 S.Ct. at 932 & n. 12. As the Seventh Circuit has noted, the Act has its own incentive scheme regarding negligence suits against shipowners:

**1.** "The legislative history [of the 1959 amendments] demonstrates that Congress did not intend to alter the rule allowing the stevedore to recover *the full amount* of its lien from the longshoreman's third-party recovery." 445 U.S. at 80–81, 100 S.Ct. at 929 (emphasis added).

"[I]n 1972 Congress was informed of, but did not alter, the uniform rule that the longshoreman's legal fees would be paid by the longshoreman *alone*." *Id.* at 85, 100 S.Ct. at 931 (emphasis added).

"[T]he stevedore [sh]ould be reimbursed *in full* for his compensation payment." *Id.* at 86, 100 S.Ct. at 932 (emphasis added).

"[O]ur review of the Act and its legislative history persuades us that Congress intended the stevedore to recover *the full amount* of its lien, regardless of who brings the action." *Id.* at 87 n. 14, 100 S.Ct. at 932 n. 14 (emphasis added).

"[Under a contrary holding, the] stevedore would not obtain reimbursement for *the full amount* of its compensation payment, but would instead have that amount reduced by a possibly substantial legal fee." *Id.* at 87, 100 S.Ct. at 932–933 (emphasis added).

**2.** The majority's concern for maintaining the logical symmetry of the Act is misguided. The majority finds it "incongruous to favor the compensation lien over the longshoreman's attorney's fee in distributing a longshoreman's tort recovery when the Act specifically provides that, when the stevedore sues on the longshoreman's claim, expenses, including a reasonable attorney's fee, shall be reimbursed before the compensation lien is paid". 724 F.2d at 1176. There is no incongruity in this result, because of the congressional policy of conserving stevedores' resources. Any asymmetry is irrelevant. *Cf.* O. Holmes, *The Common Law* 1 (1886): "The life of the law has not been logic; it has been experience."

"In the event the longshoreman does not bring suit against the shipowner within six months—presumably because there is little potential for substantial recovery over and above the compensation award—the stevedore, using its own attorneys and making its own assessment of the likelihood and amount of recovery, can bring suit. That statutory mechanism encourages the stevedore to sue when the negligence claim appears meritorious but the longshoreman's potential incremental recovery is small. Thus, [giving the attorney's fees priority over the compensation lien] encourages litigation brought nominally on behalf of the longshoreman in cases where the stevedore's interest is relatively greater than the longshoreman's. Such reflexive litigation brought on behalf of a party with minimal interest in the outcome is inconsistent with the Act's 'special incentives designed to encourage the stevedore to bring suit on its own if the longshoreman elects not to do so.' *Bloomer,* 445 U.S. at 86 n. 12 [100 S.Ct. at 932 n. 12]. Congress, we believe, intended that the stevedore pursue those cases rather than the longshoreman's attorney, who may be motivated by an artificially inflated contingent fee."

*Johnson,* 629 F.2d at 1249 (citations omitted).

As the Supreme Court noted in *Bloomer,* a principal concern underlying the recognition of the stevedore's compensation lien has been the prospect that the longshoreman would receive a "double recovery"—a total recovery in excess of the amount he would have received solely through his third-party action—while the stevedore would not receive full reimbursement. *See* 445 U.S. at 79, 100 S.Ct. at 928. That prospect was a principal concern in the *Bloomer* opinion itself. *See id.* at 80, 87,

100 S.Ct. at 929–932. In any insufficient-recovery case, such as the present one, the longshoreman has *already* received compensation benefits in an amount greater than the net recovery he would have obtained in his negligence action alone.[3] To grant the longshoreman's attorney's fees priority over the compensation lien, and thus effectively to tax the stevedore for part of the attorney's fees, flies in the face of *Bloomer.* The Supreme Court stated in that case:

"To force the stevedore to [pay part of the longshoreman's legal expenses], . . . would guarantee the longshoreman a total recovery in excess of the amount he received in his third-party action. *Solely by virtue of the compensation scheme, then, the longshoreman would receive a greater sum than would be possible in an ordinary suit for damages. At the same time the stevedore would be prevented from recovering the full amount of its compensation payment.* The courts concluded that these results would violate legislative purposes . . . ."

445 U.S. at 80, 100 S.Ct. at 929 (emphasis added). The effect of the majority's decision is precisely the result avoided in *Bloomer.*[4]

I believe that the better result would be to follow the approach of the Seventh Circuit in *Johnson:* allow the stevedore to recover first against the longshoreman's judgment, then assess a reasonable attorney's fee in the light of the amount remaining. This approach is consistent with the Supreme Court's interpretation of the Act. The majority's approach is not.

---

**3.** In the present case, Mr. Ochoa has received $42,025 in compensation benefits. His net recovery from a third-party suit alone would have been $33,477—the amount of the judgment left after expenses and attorney's fees are deducted.

**4.** As the majority notes, the *Bloomer* opinion states that it does not address the issue of priority of liens in an insufficient-recovery situation. 445 U.S. at 86 n. 13, 100 S.Ct. at 932 n. 13. Such a footnote qualification cannot support a result contrary to the reasoning of the opinion.