Terrence PETERS

v.

**SPEEFLO MANUFACTURING CORP.**

Civ. A. No. 83–714.

United States District Court,
E.D. Louisiana.

May 16, 1984.

Harry T. Widmann, New Orleans, La., for plaintiff.

Paul A. Eckert, Metairie, La., for defendant.

Anthony J. Staines, New Orleans, La., for intervenor.

## REASONS FOR JUDGMENT

DUPLANTIER, District Judge.

■ Resolving an issue as to which there is apparently no controlling precedent, we hold that an employer who has paid medical expenses and compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act cannot claim reimbursement out of the funds resulting from a settlement entered into between the employee and an alleged third-party tortfeasor, where the terms of the settlement specifically provide otherwise and reserve the right of the employer to proceed with its claim against the third party for reimbursement of the amounts paid.

In this products liability suit, jurisdiction being based upon diversity of citizenship, plaintiff, Terrence Peters, claimed damages for bodily injuries he received in an accident which occurred while he was cleaning the hose line of a spray gun manufactured by the defendant, Speeflo Manufacturing Corporation. Plaintiff's employer, Bergeron Shipyards, Inc., and its insurance carrier intervened for reimbursement of approximately $30,000 in medical expenses and compensation benefits paid under the Longshoremen's and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. § 901 *et seq.* Defendant strenuously contested its liability.

On the day before trial was to start, plaintiff and defendant reached a settlement. Plaintiff was to receive $60,000[1], and in addition defendant was obligated either to settle or litigate the intervenors' claim. Because plaintiff had not received payment of the agreed amount, he filed a motion to enforce settlement. Intervenors filed a "motion to recognize lien" under the Act, contending that they were entitled to be paid out of the settlement with plaintiff, notwithstanding the agreement between plaintiff and defendant to the contrary. The motion to enforce settlement was granted, and the intervenors' motion was

denied. A judgment was entered in favor of plaintiff and against defendant, giving effect to their settlement agreement and reserving intervenors' right to a trial of their claim against defendant.

Intervenors, contending that the judgment improperly omitted recognition of their lien, filed a "motion to alter or amend judgment or in the alternative for summary judgment." That motion was denied, and a date was set for the trial of intervenors' claim. At the trial, intervenors declined the court's invitation to present evidence to establish defendant's liability; they elected instead merely to introduce evidence of the amount paid under the Act and to pray for judgment against the plaintiff and defendant. Judgment was entered dismissing intervenors' claim with prejudice.

■ The thrust of intervenors' position is that a compensation lien under the Act attaches to the funds resulting from any settlement between a plaintiff and a third-party tortfeasor without regard to the terms of the settlement or the merits of the plaintiff's case. We recognize that such a lien would attach to the proceeds of a judgment entered after trial on the merits, *The Etna,* 138 F.2d 37 (3d Cir.1943), and in some situations to the proceeds of a settlement between the injured employee and a third party. However, we hold that the employer's right of subrogation is not equivalent to a right to assert a lien on the proceeds of a settlement entered into between the injured workman and a third party, if the third party is willing to make the settlement with the understanding that, if his liability is established, he must reimburse the full amount paid by the employer under the Act in addition to the amount paid to the injured workman.

■ Where, as here, the employer's insurance carrier has undertaken compensation and medical payments, it is subrogated to all the employer's rights under Section

1. It is undisputed that had plaintiff succeeded on the liability issue, his recovery would have exceeded the total of the settlement plus the intervenors' claim. Plaintiff's claimed wage loss alone far exceeded the settlement. His injuries included the loss of virtually all of the sight in one eye.

33 of the Act. 33 U.S.C. § 933(h). Among those rights is the right to an assignment of the employee's claim against a third party, where compensation has been paid under an award in a compensation order and the employee himself has not commenced such action within six months of such award. 33 U.S.C. § 933(b). The Act also provides for the manner in which the recovery from a third party as a result of such assignment is distributed. 33 U.S.C. § 933(e). The Act does not specifically provide for subrogation rights or distribution of recovery funds where, as here, there has been no formal award and the third-party recovery is obtained as a result of an action instituted by the employee. However, the courts have long recognized a right of subrogation to the extent of payments made, and for that purpose have permitted interventions such as that of intervenors, even where compensation has been paid without the entry of a formal award. Thus the right that intervenors assert herein is a "judicial creature with the statute as a rationale." *Allen v. Texaco, Inc.*, 510 F.2d 977, 979 (5th Cir.1975).

Because the right is judicially created, resolution of the issue before us is not controlled by statute. We must fashion a remedy appropriate for the situation with which we are confronted, consistent with the spirit of the Act and the ends of justice. In a similar situation, the Fifth Circuit has recently acknowledged the necessity of formulating an appropriate remedy in order to make a fair distribution of the third-party recovery fund among the injured worker, his attorney, and his employer. *Ochoa v. Employers National Insurance Co.*, 724 F.2d 1171 (5th Cir.1984).

■ Some cases have recognized, directly or indirectly, that the right of subrogation results in "an equitable lien" attached to the plaintiff's recovery, whether that recovery is by way of judgment or settlement. *Allen v. Texaco, Inc., supra; Davillier v. Cavn Venezuelan Line*, 407 F.Supp. 1234 (E.D.La.1976). The issue before us is whether this right to reimbursement precludes the plaintiff employee and

defendant third party from entering into a settlement agreement, the terms of which specifically negate the intervenors' right to a portion of the settlement funds and reserve the intervenors' claim against the third party. We hold that it does not.

Some courts that have recognized a lien on settlement proceeds have been concerned with the impropriety of allowing the plaintiff employee to receive what amounts to a double recovery. *See Davillier, supra*, and cases cited therein. There is no concern about double recovery in the instant case: the amount paid to plaintiff was reduced by whatever value plaintiff and defendant assigned to the intervenors' claim, which survived the settlement. Plaintiff received less from defendant because his employer had paid his medical expenses and compensation benefits. In *Allen v. Texaco, Inc., supra*, the Fifth Circuit was confronted with a similar settlement, with the longshoreman receiving a net amount from a third party and the third party agreeing to pay any additional amount which might be owed to the employer's compensation carrier. However, the insurance policy contained a waiver of subrogation, and the court held that the waiver precluded the compensation insurer from asserting a claim to the settlement proceeds. *See also Capps v. Humble Oil & Refining Co.*, 536 F.2d 80 (5th Cir.1976). Thus the *Allen* court never reached the issue we have here. Interestingly, the *Allen* decision points out, as we do, that double recovery is no concern under the terms of a settlement agreement by which the third party remains exposed to the reimbursement claim of the employer or insurer. The court found that the settlement "robs the double recovery argument of all vitality." 510 F.2d at 982.

In this case, as in *Allen*, the money paid by the defendant tortfeasor to the plaintiff employee did not include an amount for benefits already paid by intervenors. Indeed, the settlement agreements here and in *Allen* both contemplated a later trial or settlement between the third party and intervenors.

As we have already noted, the situation here is not the only one which poses serious problems in reconciling the rights and obligations of the longshoreman, his employer, and an alleged third-party tortfeasor. Courts have struggled with the allocation of the third-party recovery as between the injured employee, his attorney, and the employer's compensation carrier. *See, e.g., Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980); *Ochoa v. Employers National Insurance Co., supra.* Those cases may support the view that the insurer should receive full reimbursement for payments made before the injured employee receives anything, but they do not involve a settlement that specifically negates the right of the carrier to share in the proceeds. For example, in *Bloomer, supra*, the injured longshoreman settled with the defendant shipowner after the employer's compensation carrier had refused the longshoreman's request to reduce its lien by a share of the costs of recovery. The longshoreman then sought a summary judgment against the carrier directing that the lien on the recovery be reduced by an amount representing a proportionate share of the expenses of the suit against the shipowner. The court was thus faced with the question of whether the injured employee who has recovered in a third-party action may require the compensation carrier to share the expenses of litigation. The carrier's right to share in the settlement proceeds to some extent was apparently undisputed.

In *Ochoa, supra,* the Fifth Circuit held that an "equitable adjustment" should be made as among the injured employee, his attorney, and the compensation carrier when the third-party recovery is insufficient to cover both the attorney's fee and the carrier's lien. *Ochoa* involved a question of allocation of funds pursuant to a judgment entered after trial on the merits. As in *Bloomer*, there was no dispute, nor could there have been, that the carrier was entitled to a lien on the recovery fund. We recognize that the *Ochoa* court was faced with quite a different case from the

present one; nevertheless, the court's ruling that the carrier's lien is payable out of the net recovery, after costs and attorney's fees, supports our view that intervenors herein are not entitled to a "free ride" on the plaintiff employee's coat tails. At the very least, *Ochoa*'s message is that the compensation carrier does not have absolute control (at no expense) over the injured worker's claim and the proceeds therefrom.

Intervenors' position does violence to the well-established principle that settlements are favored in the law. *Matter of Jackson Brewing Co.*, 624 F.2d 599 (5th Cir.1980); *Swift Chemical Co. v. Usamex Fertilizers, Inc.*, 490 F.Supp. 1343 (E.D.La.1980), *aff'd* 646 F.2d 1121 (5th Cir.1981). The logical extension of intervenors' argument is that a compensation carrier who has intervened in an employee's third-party action could prevent settlement of the main demand by refusing to accept the terms of the settlement agreement. Plaintiff and defendant agreed on an appropriate discount of plaintiff's claim based upon the questionable liability of defendant and the pendency of the employer's claim for reimbursement of compensation benefits. The intervenor should not be able to thwart that settlement.

Our ruling will serve to encourage, rather than interfere with, the settlement process. In *Passman v. Companhia de Navegacao Maritima Netumar*, 544 F.Supp. 451 (E.D.Pa.1982), an injured longshoreman who brought a third-party action named his employer and the employer's insurer as defendants, seeking a declaratory judgment that they were real parties in interest to the extent of their respective compensation liens and that they should therefore be required to join the suit as involuntary plaintiffs. Fed.R.Civ.P. 17(a). The court ruled against the longshoreman, granting a motion to dismiss filed on behalf of the employer and its insurer. The plaintiff's declaratory judgment action had been prompted by the ruling in *Bloomer* that the employer is not required to bear a portion of the costs of the employee's third-party action, even though the employer ob-

tains the full amount of its payments from the employee's recovery. The plaintiff argued, with some justification, that the practical effect of *Bloomer* was to interfere with the settlement process, since the lienholder could insist that a case be tried even though the employee concludes it is in his best interest to settle. The *Passman* court, while not disagreeing with the plaintiff's argument, found that the employer and insurer were not real parties in interest under Rule 17. The court also noted that the relief sought by the plaintiff would circumvent the "fundamental principle," as recognized by *Bloomer*, that the employer should not be required to incur litigation costs in obtaining reimbursement of payments made under the Act. We do not read *Bloomer* so broadly as to require that employees must forego desirable settlements merely to insure that employers receive full reimbursement without expense.

The facts of this case provide a good example of the inequities that would arise if an employer who has intervened in an employee's third-party action could successfully assert a lien on the settlement funds, even though the terms of the settlement agreement negate his right to do so. Plaintiff agreed to accept $60,000 from defendant, with the clear understanding that he would keep the entire amount, less costs and attorney fees. Plaintiff made the settlement after analyzing the value of his claim and the burden of proving defendant's liability at trial. The $60,000 represents a bargained-for figure that the plaintiff and defendant arrived at *exclusive of* medical expenses and compensation payments. Intervenors now claim that they are entitled to more than half of the $60,000 as reimbursement for items of damages not included in the agreement between plaintiff and defendant. We refuse to allow intervenors to defeat the negotiated agreement between the plaintiff and defendant in this manner.

A hypothetical is helpful to illustrate the quandary created by intervenors' position in light of the realities of good faith settlement negotiations. An employee brings a third-party action in which the employer has intervened to recover $50,000 paid under the Act. All parties agree, in the course of settlement negotiations, that if the case went to trial, a likely jury verdict would be $350,000, with the plaintiff receiving $300,000 and the employer being reimbursed $50,000, the full amount of his claim. The plaintiff and defendant realistically agree that plaintiff has a 20% chance of success at trial on the merits. Plaintiff is willing to settle his claim for $60,000, 20% of his share of the anticipated verdict if he succeeds on the liability issue. The defendant is also willing to settle the entire case for 20% of his realistic $350,000 exposure, a total of $70,000. Plaintiff suggests that intervenor recognize the reality of the 20% figure and make a pro rata reduction in the claim for reimbursement, taking into account that if plaintiff loses the liability issue, intervenor will receive nothing. Intervenor, however, insists that he receive the full value of his claim, or $50,000. Understandably, defendant is willing to pay no more than the true "settlement value," or $70,000 total. Thus, the plaintiff employee must either go to trial and face an 80% likelihood of not recovering at all or accept a settlement under which he will receive only $20,000, one-third of the true "settlement value" of his claim, and intervenor will receive $50,000, five times the settlement value of his claim. To add insult, out of plaintiff's settlement proceeds the total costs and attorney's fees will be deducted; out of intervenor's, none.

We conclude that if the defendant is willing to pay the plaintiff $60,000 in settlement, with the understanding that the defendant will either settle or litigate the intervenor's claim, the intervenor should not be allowed to prevent that agreement.[2] We do not believe that the scheme of the Act contemplates a different conclusion.

Two approaches can be taken in considering the circumstances of this case and the

---

**2.** Our experience in the vast majority of these cases is that the intervenor seeking reimbursement usually is willing to discount his claim to facilitate settlement.

hypothetical set forth above. Plaintiff's claim resulting from his accident can be viewed as a single claim for damages arising from injury due to the fault of another, with the payment by his employer considered as a partial satisfaction of that single claim. Consistent with this view, any payment by the third party is not an additional payment to the employee; the first monies must go to the employer, who has in effect made an advance to plaintiff against his potential third-party recovery. This is intervenors' view of the world.

The second approach views the payments made by the employer as entirely separate from and unrelated to (as indeed they are) third-party fault; the duty to make payments to the employee arises from an injury which occurred during the course of the employer-employee relationship. Two claims against the alleged tortfeasor result: (1) a claim for reimbursement on behalf of the employer who has made payments under the Act, and (2) a claim for tortious injuring on behalf of the employee. Either claim can be settled by the respective claimant at any figure deemed by him to be advantageous, provided the other claim is unaffected thereby. This is our view; the law should encourage settlement. Indeed, if the judicial system is to survive, dispute resolution short of trials on the merits must be encouraged.

We note that intervenors are now in the same posture as they would have been in had plaintiff not sued defendant. An employer is assigned the employee's right of action under Section 33(b) of the Act where there has been a formal award in a compensation order, and an employer who makes voluntary payments under the Act has a non-statutory claim for reimbursement against a third-party tortfeasor. *Louviere v. Shell Oil Co.*, 509 F.2d 278 (5th Cir.1975); *See also Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, ——, 103 S.Ct. 1991, 1996, 76 L.Ed.2d 120 (1983). However, had plaintiff chosen not to pursue a claim against defendant, instead of a right of intervention in their employee's suit, the sole remedy of the employer and

its insurer would have been a direct suit against the third party, with success dependent upon proof of negligence of that third party. That is exactly the position in which the intervenors now find themselves. To state it differently, intervenors have no justifiable complaint that the settlement at issue prejudiced them in any way.

As counsel for intervenors was told on several occasions during the course of this proceeding, nothing prevented intervenors from proving the alleged tortfeasor's negligence and recovering the full amount of their claim in a trial on the merits. Because intervenors elected merely to present evidence of benefits paid, intervenors' prayer for judgment against plaintiff and defendant was denied.